# JOHN FORSYTHE

*v.*

# JOHN L. BEVERIDGE.

ATTORNEY'S FEES—*lien.* An attorney at law has no lien upon a judgment for his fee in the litigation resulting in its recovery.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

The opinion states the case.

Messrs. GOUDY & CHANDLER, for the appellant.

Messrs. HURD, BOOTH & KREAMER, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

Hurd, Booth and Kreamer, as attorneys of Ainsworth, obtained a judgment in the superior court of Chicago, against Turner and Nichols. The judgment was assigned to Forsythe, the appellant herein, and the money having been collected by Beveridge, the sheriff, and appellee herein, Forsythe seeks a rule upon him for its payment. This is resisted by Hurd, Booth and Kreamer, who claim an attorney's lien upon the judgment, to the extent of their fees in the litigation resulting in its recovery. The superior court sustained their claim, and directed the money to be paid into court, there to remain until the amount of their fees could be settled by a jury. The question for our determination is, whether, in this State, a lien of this character exists.

An analogous, though not identical, question was decided by this court in *Humphrey* v. *Browning,* 46 Ill. 477, which had not been reported when this case was decided in the court below. The question there was, whether such a lien existed

on land recovered in an action of ejectment. We held it did not, and said this lien should be recognized as applying to the judgment itself, only when statutes or rules of court allowed specific fees taxable as costs. The opinion in that case comments on nearly all the authorities cited by counsel in the present case, and it is unnecessary again to review them.

In addition to those authorities, counsel for appellee cite *Rowey* v. *Second Avenue R. R. Co.* 18 N. Y. 368, and *Warfield* v. *Campbell*, 38 Ala. 527, both which cases fully sustain their position.

The result of a review of the authorities is briefly this : In England, no precedent has been quoted, and probably none can be, in which a lien has been claimed to a greater extent than the taxable costs and disbursements. We are not able to speak with confidence as to the extent to which these costs and disbursements may go, but from our understanding of the English practice, we suppose it must often happen that attorneys advance from their own pockets, in counsel fees, a far larger sum than they are allowed to tax as costs, and yet we hear of no lien being claimed upon the judgment for such extra counsel fees.

In this country there is great conflict of authorities. New York, Alabama, Georgia and Florida, are among the States in which it has been distinctly held that the lien exists, even where the compensation of an attorney is upon the principle of a *quantum meruit*. In Vermont, New Hampshire, Pennsylvania, Indiana and Missouri, the contrary rule is held. Other States have shown an inclination, some to one rule, some to the other.

In this conflict of cases it can hardly be said there is a decided preponderance of authorities on one side or the other, and we must regard ourselves as quite at liberty to adopt that rule which we think the more reasonable and just. On this question we have but little doubt. When it is said, as it is in some of the cases cited by appellee, that there is no reason why the lien should be allowed in cases where the attorney's fees

are fixed, and form a part of the taxed costs, and not allowed when such fees rest wholly in a contract, express or implied, they seem to us wholly to beg the question.

In the first place, where the fees are taxable, they are made a part of the judgment, and though recovered in the name, of the successful party, yet, as they really belong to his attorney, there is no reason why the court should not protect and enforce his claim. Although this is, for convenience, called a lien, yet as remarked by the supreme court of New Hampshire, in *Wright* v. *Cobleigh*, 1 Foster, 341, as there is no possession, it is not so much a strict common law lien, like that which an attorney has upon papers or money in his hands, as an equitable ownership in a certain part of the judgment; and as the judgment is indivisible, this equity is recognized as the paramount claim upon its proceeds. Persons dealing with the judgment creditor do so with notice of the existence of the equity and its extent. But very different is it where the fees are not taxable, and rest solely upon express or implied contract, as in this State. In that case they do not form a part of the judgment. The successful party recovers from the other side no part of the fees for which he has become liable to his attorney. The latter, therefore, has no equitable ownership in any portion of the judgment. No part of it represents the value of his services, and he has no equity in it which the court can be asked to protect.

. But besides this distinction, there is another of quite a different character, but entitled to great weight. Where the fees are fixed by law or rule of court, and taxed, the attorney can exercise no unreasonable power over his client by means of this so-called lien. The amount of the attorney's interest in the judgment being easily determinable, the owner of the judgment can deal with it as he would with any other *chose in action* in which another person has a limited and fixed interest. There is little room for controversy between the client and his attorney, and if the sheriff collects the money on execution, he can ascertain the amount of taxed costs, and need

only retain for the attorney this amount. But suppose we hold this lien exists on the principle of a *quantum meruit.* What would be the result? A plaintiff obtains against a solvent defendant a judgment for a large amount. His attorney demands an exorbitant fee. The client demurs to the payment, and the attorney informs him, until his fees are paid, he can himself receive none of the fruits of his own judgment. If the money is in the sheriff's hands, that officer would not dare, without indemnity, to pay any part of it over, as he could not tell what sum might be allowed for fees. The client, then, is' in this dilemma: He must either submit to the payment of an unreasonable fee, or he must go for an indefinite time without the use of his money, which may be of vital importance to him, and must engage in new and expensive litigation with his own counsel, with whom his relations had been confidential, and towards whom he would be very unwilling to take a hostile position.

In our opinion, it is not the policy of our law to place attorney and client in this position. We cannot consent to a rule which would lodge in the attorney's hands a power that might be so unreasonably and unjustly exercised, and which is not necessary to his protection. Honorable in their relations with their clients, as members of the bar, as a general rule, undoubtedly are, it must be admitted there are those by whom this power would be abused. It is of course desirable "that a party should not run away with the fruits of a cause without satisfying the legal demand of his attorney," as said by Lord KENYON in *Read* v. *Dupper*, 6 Term 362, but if we establish the principle here contended for, there would be cases in which a very unreasonable portion of the fruits would be demanded by the attorney, and collected under the pressure he could bring to bear upon his client. For the fifty years that Illinois has been a State, our profession has thriven in worldly goods, and its members have been the trusted leaders of society, without asking for the establishment of this rule, or deeming

it needful for their protection, and in our opinion its establishment would, in the end, bring discredit upon the profession at large, through its abuse in the hands of the unprincipled and avaricious.

The judgment is reversed and the cause remanded. The superior court will enter a rule requiring the sheriff to pay over the money to Forsythe.

*Judgment reversed.*