HENRY A. HORTON, Trustee, *vs.* IRVING CHAMPLIN.

B. sued A., and judgment was given in favor of A. for his costs. Subsequently A.'s attorney brought debt on this judgment against B., using the name of A.

It coming to the knowledge of the court that this action was brought without authority from A.:

*Held*, that the action was not legally brought.

*Held*, further, that A. not being legally in court, the action must be dismissed without costs.

Relation of attorney and client defined.

An attorney's lien on a judgment in his client's favor originates in the control which by his retainer the attorney has over the judgment and the legal process which enforces it. This enables him to collect the judgment and reimburse himself. It gives him no right to exceed the authority given by the retainer. The attorney has, however, to the amount of his fees and expenses, an equitable right to control the judgment against his client and his opponent, if in collusion with his client, which the court at its discretion will protect and enforce. So the court will, if possible, protect the attorney in matters of equitable set-off. This is the full scope of the attorney's lien, so called. The lien does not authorize a suit on the judgment without the client's consent and direction.

EXCEPTIONS to the Court of Common Pleas.

*March* 6, 1880. DURFEE, C. J. This action is debt on a judgment for costs recovered by the plaintiff in an action in which the

parties were reversed.[1]   The present action was brought in a jus-
tice court, appealed to the Court of Common Pleas, and comes
here by bill of exceptions.   One of the exceptions is for the re-
fusal of the court below to dismiss the action on motion of the
defendant, because it was brought and is prosecuted without au-
thority.   The attorney who prosecutes the action admits that he
was not expressly authorized to bring it, but justifies himself on
the ground that he was attorney for the present plaintiff in the
action in which the judgment in suit was recovered, and has a
lien on the judgment for fees and costs, and he claims, that by
reason of this and of his former employment, he was and is en-
titled to institute and prosecute the action.   Is his claim valid ?
We think not.

The authority of an attorney retained to prosecute or defend
an action, extends only to the recovery of final judgment and to
its enforcement by execution or other subsidiary proceedings.
He cannot institute a new action to revive or enforce the judg-
ment without a new warrant or authority from his client.   *Kel-
logg* v. *Gilbert*, 10 Johns. Rep. 220 ; *Walradt* v. *Maynard*, 3
Barb. S. C. 484; *Lust* v. *Hastings*, 1 Hill, N. Y. 658 ; *Macbeath*
v. *Cooke*, 1 Moore & Payne, 513 ; 4 Bing. 578 ; *Richardson* v.
*Talbott*, 2 Bibb, 382 ; *Hinkley* v. *St. Anthony Falls Co.* 9 Minn.
55 ; *Egan* v. *Rooney*, 38 How. Pr. 121 ; *Day* v. *Welles*, 31 Conn.
344.

The attorney, in support of his right to sue the judgment by
virtue of his lien, cites *Woods* v. *Berry*, 4 Gray, 357 ; *Stratton* v.
*Hussey*, 62 Me. 283 ; *Currier* v. *Boston & Maine R. R.* 37 N. H.
223 ; *Marshall* v. *Meech*, 51 N. Y. 140.   The first two cases,
those from Massachusetts and Maine, hold that the attorney has
the right to sue the judgment, by virtue of his lien for fees and
disbursements, which in those States is given by statute, no lien
at common law having ever been recognized.   The cases are
therefore not very strong authority for a State where no such
statute exists.   The other two cases emphatically assert the lien,
but do not expressly decide that it authorizes the attorney to sue
the judgment.   The New York case, however, does hold that the
attorney is to the amount of his lien to be deemed an equitable

---

[1] *Champlin* v. *Horton, ante,* p. 123.

assignee of the judgment, which is perhaps equivalent to holding that he has a right to sue it. But in our opinion it is going too far to hold that the attorney has the same control of the judgment as if it were assigned to him, for if he had, his client could not settle with the adverse party, and it has been repeatedly decided that he can settle with him, unless they collude to cheat the attorney. *Graves* v. *Eades*, 5 Taunt. 429; also 1 Marsh. C. P. 113; *Marr* v. *Smith*, 4 B. & A. 466; *Welsh* v. *Hole*, 1 Doug. 238; *Pender* v. *Morris*, 3 Cai. Rep. 165. And even when the parties collude, the remedy is not in the hands of the attorney; but the judgment being released and the sheriff notified not to proceed, the sheriff will be liable as a trespasser if he does proceed, though he proceeds under the order of the attorney for the costs. *Barker* v. *St. Quintin*, 12 M. & W. 441. The proper course for the attorney in such a case is to ask the intervention of the court. Ibid.; also *Rooney* v. *Second Avenue R. R. Co.* 18 N. Y. 368.

The origin and extent of the lien at common law is obscure. Baron Parke said, in *Barker* v. *St. Quintin, supra,* " the lien which an attorney is said to have on a judgment, which is, perhaps, an incorrect expression, is merely a claim to the equitable interference of the court to have the judgment held as a security for the debt." This view of the lien was approved in *Hough* v. *Edwards*, 1 H. & N. 171, Baron Martin adding, by way of further explication, that " the right of the attorney is merely this, . . . . that if he gets the fruits of the judgment into his hands, the court will not deprive him of them until his costs are paid." Accordingly, in *Hough* v. *Edwards*, the court held that an attachment of the judgment was paramount to the lien.

In our opinion, the two remarks of Baron Parke and Baron Martin, together, pretty exactly define the lien. Primarily, without doubt, the lien originates in the control which the attorney has by his retainer over the judgment, and the processes for its enforcement. This enables him to collect the judgment, and reimburse himself out of the proceeds. It gives him no right, however, to exceed the authority conferred by his retainer. But inasmuch as the attorney has the right, or at least is induced, to rely on his retainer to secure him in this way for his fees and disbursements, he thereby acquires a sort of equity, to the extent

of his fees and disbursements, to control the judgment and its incidental processes, against his client and the adverse party colluding with his client, which the court will, in the exercise of a reasonable discretion, protect and enforce. And on the same ground, the court will, when it can, protect the attorney in matters of equitable set-off. We think this is the full scope of the lien, if lien it can be called. It does not authorize the attorney to sue the judgment, without the consent or direction of the client. See *Jordan* v. *Hunt*, 3 Dowl. P. C. 666 ; *Francis* v. *Webb*, 7 C. B. 731 ; *Jones* v. *Bonner*, 2 Exch. Rep. 229 ; *Clark* v. *Smith*, 6 M. & G. 1051.

The attorney contends that the judgment, being in favor of his client, as defendant, only for his costs, belongs absolutely to the attorney. If this be so, the right of the attorney to sue the judgment can hardly be questioned. We are not prepared to say that it is not so in some States by statute. We do not find any statute which convinces us that it is so in this State, and, *primâ facie*, the judgment belongs to the party in whose favor it is rendered. In *The People* v. *Hardenbergh*, 8 Johns. Rep. 209, it was decided that a settlement of the costs by the defendant in a suit, in whose favor they are awarded, with the plaintiff is valid, if made without notice from the defendant's attorney of any claim or lien, and without any collusion to deprive the attorney of his costs. This decision is inconsistent with the idea of absolute ownership by the attorney. See also *Quested* v. *Callis*, 10 M. & W. 19. We have no doubt that attorneys are accustomed to treat the costs as their perquisites, and the custom is not wholly without warrant, inasmuch as the costs do more specifically represent their disbursements and services than the debt or damages. But, so far as we know, the custom has never been held to authorize the attorney to sue the judgment for his own benefit, or to do more than enforce it by the usual processes, and, having collected it, pocket the costs without accounting for them to his client.

The judgment, if sued, would be liable to statutory set-off ; and thus the attorney, if allowed to sue it without the consent of the client, might involve him in an unwished-for controversy, with the possible result of a judgment against him instead of one in his favor. *Nicoll* v. *Nicoll*, 16 Wend. 441; *Brooks* v. *Hanford*, 15 Ab. Pr. 342 ; *Benjamin* v. *Benjamin*, 17 Conn. 110.

Our conclusion is, that the attorney instituted and is prosecuting the action without authority, and that it must therefore be dismissed; for though the court will presume that an attorney who brings an action has authority to bring it, until the contrary appears, yet it will not knowingly permit him to abuse his privilege; but, when the contrary appears, will for its own protection as well as for the protection of the parties, order the action dismissed. *Frye* v. *County of Calhoun*, 14 Ill. 132; *Crichfield* v. *Porter*, 3 Ohio, 518; *Campbell* v. *Bristol*, 19 Wend. 101; *Dobbins* v. *Dupree*, 39 Ga. 394. Of course, however, we cannot enter any judgment against the plaintiff for costs; for the dismissal is ordered on the ground that the plaintiff is not legally in court.

POTTER, J., concurring. Mathewson, the attorney, brings this suit in the name of Horton as trustee to himself against the defendant.

Champlin had sued Horton in an action at law and the judgment was for the defendant, Horton, for his costs.[1]

Mathewson was attorney for Horton and claims that the costs belong to him and that therefore he has a right to sue as he does.

A fee is taxed to the attorney every term. But if he therefore can sue in the name of the party, there is no reason why a clerk or an officer cannot do the same. And in case of a plaintiff recovering judgment the objection to this course is very obvious.

It is true the clerk and officer, if they have not been paid, can sue the party; so can the attorney.

The plaintiff evidently supposes that he has a lien, not only for the costs taxed to the attorney of the successful party, but for his charges and for all his services, sometimes called fees, as he claims a lien for costs in cases where a party recovers debt or damages only and no costs.

It might possibly be for the public good if this was the law. If a man when he began a lawsuit knew that having employed an attorney he could not dismiss him, and that after he had gained his case he would be obliged to have another lawsuit with his own attorney to get his money from him, and so on again, it would tend very much to diminish litigation, and a defendant would get out of such a suit as quick as possible.

---

[1] *Ante*, p. 123.

It might also make parties more cautious as to choosing attorneys upon whose honor they could rely.

The client in the present case may have shown a disposition to defraud his attorney of his reasonable dues for his services. But we are now only concerned with the general rule.

If any attorney should be entitled to a lien upon a judgment for money for anything beyond his taxable costs, it would seem that he ought to have the same lien where the recovery is for land. See this question decided and a great number of cases quoted in *Humphrey* v. *Browning*, 46 Ill. 476.

The lien claimed for the attorney is no part of the old common law. See *Getchell* v. *Clark*, 5 Mass. 309; *Baker* v. *Cook*, 11 Mass. 236, 238; *Simmons* v. *Almy*, 103 Mass. 33.

A great deal of confusion may arise from not distinguishing between the costs taxed to the attorney and his charges for services. In many States there are costs taxed as between attorney and client, whereas we have none such here. And in countries or states where such a lien is held to exist the cases generally recognize that it extends not to counsel fees proper, but to the taxed costs only. *Ocean Insurance Co.* v. *Rider*, 22 Pick. 210; *Wright* v. *Cobleigh*, 21 N. H. 339.

In England the so-called lien is comparatively modern, and it seems from Comyns' Dig. Attorney, B. 11; see also B. 16, to have been founded on an old rule of court, Pr. Reg. 2, 4, implying that a client cannot discharge his attorney without leave of court, evidently intended in part to protect the attorney's costs. See also Bacon's Abridg. Attorney, E. But its main purpose may have been to compel the party to notify the court of a change of attorney, that the court and opposite attorneys might always know whom to serve papers, orders, and notices upon.

In *Mitchell* v. *Oldfield*, 4 Term Rep. 123, A. D. 1791, Lord Kenyon said the lien depended on the general jurisdiction over the suitors. Buller said that the court had before laid down the rule that they would not interfere to prevent the client from settling his own case without first paying his attorney. But in that case a rule was made for payment of the costs.

In *Wilkins* v. *Carmichael*, 1 Doug. 101, 104, A. D. 1779, Lord Mansfield said that the lien upon papers was not very ancient, but the court had now carried it so far as to stop the payment of

money to the client until the attorney's bill was paid. The counsel in the case mentioned the first instance of such an order. In *Welsh* v. *Hole*, 1 Doug. 238, Lord Mansfield said the attorney had a lien on money received, for his bill of costs. If it came to his hands he could retain it, or he might apply to the court and they would prevent its being paid over until the attorney's bill was paid. But he was inclined to go still farther, and to hold that the attorney might give notice to the defendant, &c. But he thought they could not go beyond that. In that case the plaintiff compromised the case and the court sustained it.

These cases show that the English practice was not settled very early. And it should be considered that the jurisdiction of the King's Bench is almost without limit, and that they can do things which would not be allowed in our courts.

In this country the practice has varied very much. See Story on Agency, § 383. In most of the cases usually referred to, the lien is either given or recognized by statute.

In New York it is recognized by statute, but only as to the costs taxed to the attorney and not for services, and it is enough to show how far they have carried the doctrine of the power of an attorney, to refer to a case, *Anon.* 1 Wend. 108, where the court is represented (?) as laying it down generally that the client could not control the attorney in the conduct of the suit. If the court only intended to say the client could not oblige his attorney to argue a point which he knew was against the settled law, which was that case, or to say that no attorney could be compelled by his client to do anything that would injure his professional reputation, it was reasonable enough, and the attorney should exercise a discretion in this. Within my own experience, I have known lawyers to make points in a case almost as a matter of desperation, and to succeed by them. There is hardly any nonsense for which some authority cannot be found in a large law library.

And in *St. John* v. *Diefendorf*, 12 Wend. 261, the New York Supreme Court held, that until notice given, the officer could pay the attorney's costs to the plaintiff without incurring any liability to the attorney.

*Platt* v. *Jerome*, 19 How. U. S. 384, was a case from the New York Circuit Court. In the Circuit Court Jerome had judg-

ment for costs only and became insolvent. The parties settled the case and agreed that the writ of error should be dismissed. Jerome's counsel opposed the dismissal, and claimed a lien on the judgment for his costs. Nelson, J., says: " It is quite clear he can have no lien for any costs in this court, as none have been recovered against the plaintiff in error. . . . . The court looks no farther than to see that the application for the dismissal is made by the competent parties, which are usually the parties to the record. . . . . He is not a party to the suit nor does he stand in the place of the party in interest. He is in no way responsible for the costs of the proceedings, and to permit him to control them would, in effect, be compelling the client to carry on the litigation at his own expense, simply for the contingent benefit of the attorney." The case had been dismissed and the motion to restore it was denied.

In *Pulver* v. *Harris*, 52 N. Y. 73, 76, the court held that the suit was subject to the control of the party ; that the attorney had a lien after judgment, but not before. The latter would prevent the party from settling his case ; and see *Simmons* v. *Almy*, 103 Mass. 33 ; *Averill* v. *Longfellow*, 66 Me. 237.

In Massachusetts the lien was evidently derived from statute originating in 1810. The provision in the Massachusetts Digest of 1860, cap. 121, § 37, substantially, I believe, the same, provides that an attorney lawfully possessed of an execution or who has prosecuted a suit to final judgment for his client, shall have a lien thereon for the amount of his fees and disbursements in the cause, but this shall not prevent the payment of the execution or judgment to the judgment creditor without notice of the lien.

The Massachusetts courts have expressly recognized that there was no such lien at common law; *Baker* v. *Cooke*, 11 Mass. 236, 238 ; *Getchell* v. *Clarke*, 5 Mass. 309 ; that it depends on the statute of 1810; *Baker* v. *Cooke*, *supra ;* *Dunklee* v. *Locke*, 13 Mass. 525 ; and that, although it speaks of fees and disbursements, it refers to taxable costs only, and does not include counsel fees. *Ocean Insurance Co.* v. *Rider*, 22 Pick. 210 ; and in *Getchell* v. *Clark*, *supra*, the power of the plaintiff to settle before judgment, or to settle afterwards, is fully recognized.

In *In re Paschal*, 10 Wall. 483, which was a case from Texas,

the court, while recognizing a lien for disbursements and professional services, also allowed the attorney to be changed before his costs were paid, saying that the party was amply able to respond to whatever he might recover.

I have made these remarks upon the doctrine in general, and as to its extent in England and in this country, because they have a bearing on the question before us, and as showing the conflict of decisions, and that they depend very much on local law and usages.

In *Forsythe* v. *Beveridge*, 52 Ill. 268, the Supreme Court held that there could be no lien except when statutes or rules of court allowed specific fees as taxable costs. A portion of their opinion is worth quoting.

" But besides this distinction, there is another of quite a different character, but entitled to great weight. Where the fees are fixed by law or rule of court and taxed, the attorney can exercise no unreasonable power over his clients by means of this so-called lien. The amount of the attorney's interest in the judgment being easily determined, the owner of the judgment can deal with it, as he would with any other chose in action in which another person has a limited and fixed interest. There is little room for controversy between the client and his attorney, and if the sheriff collects the money on execution, he can ascertain the amount of taxed costs, and need only retain for the attorney this amount. But suppose we hold this lien exists on the principle of a *quantum meruit*, what would be the result ? A plaintiff obtains against a solvent defendant a judgment for a large amount. His attorney demands an exorbitant fee, the client demurs to the payment, and the attorney informs him, until his fees are paid, he can himself receive none of the fruits of his own judgment.

" If the money is in the sheriff's hands, that officer would not dare, without indemnity, to pay any part of it over, as he could not tell what sum might be allowed for fees. The client, then, is in this dilemma; he must either submit to the payment of an unreasonable fee, or he must go, for an indefinite time, without the use of his money, which may be of vital importance to him, and must engage in new and expensive litigation, with his own counsel, with whom his relations had been confidential, and towards whom he would be unwilling to take a hostile position.

" In our opinion it is not the policy of our law to place attorney and client in this position. We cannot consent to a rule which would lodge in the attorney's hands a power that might be so unreasonably and unjustly exercised, and which is not necessary to his protection. Honorable in their relations with their clients as members of the law as a general rule undoubtedly are, it must be admitted, there are those by whom this power would be abused. It is of course desirable that a party should not run away with the fruits of a cause without satisfying the legal demands of his attorney, as said by Lord Kenyon in *Read* v. *Dupper*, 6 Term Rep. 362, but if we establish the principle here contended for, there would be cases in which a very unreasonable portion of the fruits would be demanded by the attorney, and collected under the pressure he could bring to bear upon his client. For the fifty years that Illinois has been a State, our profession has thriven in worldly goods, and its members have been the trusted leaders of society, without asking for the establishment of this rule, or deeming it needful for their protection, and in our opinion its establishment would, in the end, bring discredit upon the profession at large, through its abuse in the hands of the unprincipled and avaricious."

In this State costs are taxed generally only to the party recovering and no costs are taxed as between attorney and client. It is the party who recovers the judgment and not the attorney. By the old law a fee was taxed *for* the attorney, evidently intending it as an allowance for the pay of his attorney. By the law as lately amended, a fee is taxed *to* the attorney, thus giving countenance to the claim that when recovered it belongs to him.

If there is any lien, therefore, it should be only for this fee, unless he has paid the officers' fees or other fees. The travel and attendance is expressly taxed for the party, and how any attorney can have any claim for this, it is hard to see.

It is not to be denied that the attorney generally collects the debt and whole costs, and uses it in settling with his client.

The plaintiff's attorney in this case claims the costs by an equitable assignment. It is not contended that there was any express assignment.

An equitable assignment is where a party intends to do something, to convey some right which cannot be enforced at law, but only in equity.

There is no pretence that there ever was any agreement or intention to assign this bill of costs to the plaintiff's attorney.

It cannot be claimed by usage. Usage cannot control the express words of the statute which gives the travel and attendance to the party.

There having been no assignment of the judgment, the action cannot be sustained in the name of the party as trustee to the attorney.

*Exceptions sustained. Case dismissed. No costs.*

*Rollin Mathewson*, for plaintiff.

*Bosworth & Champlin*, for defendant.