## COMPTON, ATTORNEY, v. THE STATE.

1. ATTORNEY'S LIEN: *Upon judgment recovere l for the State.*

The Governor has no power to employ counsel to represent the interests of the State in litigation, so as to give him a lien on the judgment recovered.

W. W. SMITH, S. J. After the opinion in *M. & L. R. R. Co., as reorganized, in 37 Ark.*, 632, had been delivered, and when the mortgage money was in course of being

covered into the State Treasury, Mr. Compton filed in this court, his claim of lien for $5,000, for his services as solicitor. Thereupon the court directed the clerk, who was entrusted with the execution of the decree, to deposit this sum in bank until the claimant could be heard and his claim be investigated.        .

He was employed by Governor Miller, under the following circumstances : After the cause had progressed to issue in the Pulaski Chancery Court, the Attorney-General, perceiving that some perplexing questions were raised by the answers of one of the defendants, made an application in writing, to the Governor, for the employment of associate counsel ; and Mr. Compton was retained, and thenceforward until the successful termination of the suit, rendered such services as only a lawyer of consummate skill could have rendered. No agreement was made with the Governor as to the mode or measure of compensation, as, indeed, none could have been made which would have bound any department of the government. The natural presumption is, that both parties looked to the Legislature to become paymaster to Mr. Compton, since that party could alone sanction the employment of counsel to assist the proper law officer of the State, and could alone make an appropriation of public moneys for that purpose. And whilst it was an eminently proper thing for a zealous and careful executive to engage additional counsel, if, in his judgment, the emergency demanded it, yet he did not, and, without authority from the Legislature, could not make such a contract with the solicitor as would give him a lien upon the fruits of the litigation. And herein this case differs from *In re Paschall*, 10 *Wallace*, 483. There the Legislature had previously authorized the Governor to take such steps as he might deem proper to recover possession of the Texas Indemnity bonds, and to

compromise with the holders of them, or parties through whose hands they had passed. Pursuant to this authority, the Governor had retained Paschall and had agreed that he might receive his fee out of the amount to be recovered.

By the early common law, as we understand it, an attorney had no general lien, either for his cost or his fee, upon the judgment recovered for his client; *Getchell* v. *Clark*, 5 *Mass.*, 309; *Baker* v. *Cook*, 11 *Id.*, 236; *Potter* v. *Mayo*, 3 *Greenleaf*, 34; *Forsythe* v. *Beveridge*, 52 *Ill.*, 268. *In re Wilson*, *U. S. District Court, Southern District of N. Y.*, *reported in* 26 *Albany Law Journal*, 271; but only a specific lien upon any papers of his client which might be in his hands. This lien depended upon possession, and conferred no right in the property, but only a bare right to hold possession until payment. Now, the mortgage for foreclosure of which the suit was brought, was never in Mr. Compton's hands; but had been placed in the hands of the Attorney-General, by the Joint Resolution of January 21st, 1875. See *Acts of* 1874-5. But it is plain that Mr. Compton does not claim under the attorney's " retaining lien," since that is purely passive, and no active proceedings can be taken, either at law or in equity, to procure payment out of the deeds, vouchers, and other papers so held. It is the attorney's " charging lien " upon the judgment, or the fund in court decreed to his client, under which he proceeds.

This last-mentioned lien was carved out by the English courts for the protection of attorneys and solicitors. The judges considered it their duty to take care, as Lord KENYON expresses it, in *Reade* v. *Dupper*, 6 *T. R.*, 361, that " a party should not run away with the fruits of the cause, without satisfying the legal demands of the attorney, by whose industry and expense those fruits were obtained." The oldest case we can find, establishing this right, is *Welch*

v. *Hale*, 1 *Douglass*, 238 decided by Lord MANSFIELD, in 1779. The extent of the lien in England was the taxable costs and disbursements in the particular suit. This doctrine was adopted in many of the American States, although rejected in some; and it was no longer limited to costs. Thus, in *Sexton* v. *Pike*, 13 *Ark.*, 193, it was decided that an attorney has a lien for his fee upon a judgment recovered for his client, which he may enforce against an assignee of the judgment, who has collected and discharged it. But in *Hanger* v. *Fowler*, 20 *Ark.*, 667, the court refused to extend the principle so as to charge lands. This extension has since been made by the Civil Code, (*Gantt's Dig.*, secs. 3622-6), and the whole subject is now regulated by Statute, which defines the rights of attorneys in such cases, and points out the mode of enforcing them. But it is doubtful whether the lien prevails against the State. The general rule is, that the sovereign is not bound by a Statute, unless expressly named. If, however, the act does apply to cases in which the State is the client, we are all agreed that there is no lien here, for the reason above stated—that in the absence of an enabling Act, or Concurrent Resolution of the two Houses, the Governor cannot employ counsel to represent the interests of the State, so as to give him a lien upon the judgment recovered.

It follows that we are without any jurisdiction in the premises. We can only commend the eminent counsel to the sense of justice of the General Assembly, when it shall meet. We regret that it is not in our power to fix his fee and order its payment without a violation of legal principle, and the establishment of a dangerous precedent. From the proofs adduced before us, and our familiarity with the record, we are enabled to say that the fee charged is a moderate one, regard being had to the amount in controversy, the intricate questions involved, and the grave

responsibility resting upon counsel. The State has profited by his labors, his learning, and his experience. It is only bare justice to recompense him.

The money that was deposited to abide the result of this application must be turned into the Treasury; and the clerk will see that it is done without delay.