**In re Dennis I. GOLDBERG, Debtor.**

**J. Ford Elsaesser, Chapter 7 Trustee, Plaintiff,**

**v.**

**James A. Raeon, and Paul W. Daugherty, Defendants.**

**Bankruptcy No. 98–20673.**

**Adversary No. 98–6262.**

United States Bankruptcy Court, D. Idaho.

June 10, 1999.

H. James Magnuson, Coeur d'Alene, Idaho, for the plaintiff/trustee.

Theodore L. Rupp, Coeur d'Alene, Idaho, for the defendants.

## MEMORANDUM OF DECISION AND ORDER

TERRY MYERS, Bankruptcy Judge.

This matter comes before the Court on the Plaintiff's motion for summary judgment. Pursuant to Fed.R.Civ.Pro. 52(a) incorporated by Rule 7052,[1] no findings of fact or conclusions of law are necessary in disposing of a motion for summary judgment, but, to the extent the same are implicated, this decision shall constitute such findings and conclusions.

## BACKGROUND

Dennis Goldberg ("Debtor") filed a petition for relief under chapter 13 on August 29, 1997. On February 26, 1998, the Debtor voluntarily converted to chapter 7 and Ford Elsaesser was appointed chapter 7 Trustee.

The Trustee initiated this adversary proceeding against two creditors, attorneys James Raeon and Paul Daugherty, seeking to avoid the liens they asserted, particularly against proceeds held in escrow from a prepetition sale of a parcel of the Debtor's real property.[2]

Both liens were imposed by orders of Magistrate Judge Luster of the First Judicial District Court of the State of Idaho in the case of *Dennis I. Goldberg v. Sandra M. Goldberg*, Case No. CV95–06821. The case was a divorce proceeding in which

---

1. Unless otherwise indicated, all references to "code," "title," "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1330, and all references to "rule" are to the Federal Rules of Bankruptcy Procedure.

2. The Trustee's § 544 action attacks the two liens only as asserted against these funds. See Complaint at para. VIII. The preference

action is similarly limited. Complaint at para. XI. In contrast, the § 548 action against Raeon is not limited to the lien's assertion against the "Pioneer proceeds." Complaint at para. XIII. The Plaintiff has dismissed all counts other than these three. See Stipulation, Docket No. 12, March 19, 1999; Order, Docket No. 13, March 29, 1999.

Mr. Daugherty represented the Debtor, and Mr. Raeon, his ex-wife.

Raeon's order was entered on May 2, 1997, upon a motion filed on April 28 and heard by the court on May 1.[3] It provided:

1. James A. Raeon, counsel for the Defendant herein, by this Order, has a lien, pursuant to Idaho Code 3–205, on all property whether personal or real in which DENNIS I. GOLDBERG and/or SANDRA M. GOLDBERG, jointly or individually, has/have an interest in the State of Idaho, and including but not limited to, on any bank accounts which they are signatory thereto and upon the assets of Dennis I. Goldberg, M.D., P.A. (an S Corp).

IT IS FURTHER ORDERED that this lien is to secure payment of Attorney's fees owed to James A Raeon and incurred by SANDRA M. GOLDBERG in Kootenai County Case Number CV95–06821 which at present are outstanding in the sum of TWENTY THREE THOUSAND DOLLARS ($23,-000.00) and to secure payment of all additional Attorney's fees which may be owed to James A Raeon and incurred by SANDRA M. GOLDBERG in the above referenced litigation through the office of the undersigned.

This order was recorded in Kootenai County, Idaho, on May 2, 1997.

A nearly identical order was entered on May 9, 1997, in favor of Daugherty, the Debtor's own divorce lawyer, upon a motion filed on May 1 and heard by the court the same day. These events occurred only a matter of days after the Debtor had executed an April 22, 1997 note and a deed of trust to secure Daugherty's fees.[4] The court's May 9 order provided:

1. Paul W. Daugharty, counsel for Plaintiff named herein, by this Order, has a lien pursuant to Idaho Code Section 3–205, on all property whether personal or real in which DENNIS I. GOLDBERG and/or SANDRA M. GOLDBERG, jointly or individually, has/have an interest in the State of Idaho, including but not limited to any and all bank accounts which they are signatory thereto and upon the assets of Dennis I. Goldberg, M.C., P.A. (an S Corp.).

IT IS HEREBY FURTHER ORDERED that this lien is to secure payment of Attorney's Fees owed to Paul W. Daugharty and incurred by DENNIS I. GOLDBERG in Kootenai county Case Number CV–95–06821 which at present are outstanding in the sum of TWENTY THREE THOUSAND DOLLARS ($23,000.00) and to secure payment of all additional Attorney's fees which may be owed to Paul W. Daugharty and incurred by DENNIS I. GOLDBERG in the above referenced litigation through the office of the undersigned.

This order was recorded in Kootenai County, Idaho, on May 14, 1997.[5]

---

3. Raeon's Affidavit of January 11, 1999 asserts that the Debtor "had constructive notice" of the lien request and scheduled hearing in that Raeon served the motion on Daugherty on April 28, and had "actual notice" of the motion because the Debtor was personally present in court on May 1. (Affidavit, at paras. 3, 5.) The Debtor in his Affidavit of December 15, 1998 states that he had no notice or knowledge of this lien until after bankruptcy.

4. The Debtor, in his Affidavit, asserts that he had no knowledge of Daugherty's lien request until Daugherty presented it to the state court on May 1. Daugherty's Affidavit disputes this, and alleges that matter was discussed on

April 28, when he and the Debtor discussed Raeon's motion. Why a statutory lien was sought (since counsel had just received a consensual lien) is unexplained, though the timing of Daugherty's motion and statements in his Affidavit imply that it was in reaction to Raeon's April 28 motion.

5. Idaho Code § 3–205, discussed at length *infra*, provides authority for an attorney's assertion of a lien against *his client's* property. As the text of these orders evidence, the attorneys here sought (and Judge Luster granted) liens against both Dennis' and Sandra's separate property, as well as their community property, and against a separate legal entity, an S corporation.

On July 30, 1997, the Debtor closed a sale of certain real property located in Kootenai County, Idaho.[6] The closing agent held back funds from the sale of the property due to the recorded liens of Raeon and Daugherty, specifically, $26,-201.59 for Raeon's lien and $24,132.49 for Daugherty's lien. At the time the Debtor filed his petition for relief on August 29, 1997, the closing agent still held the proceeds from the sale of the Debtor's property.

Raeon and Daugherty assert their liens are valid and reach, inter alia, the proceeds of the sale. The Trustee's adversary complaint seeks to avoid the liens through his powers under §§ 544, 547 and/or 548.[7] The Trustee has moved the Court for summary judgment.

## DISCUSSION

Summary judgment may be granted if, when the evidence is viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998). The parties have submitted affidavits and documents in support of their contentions, and have briefed issues concerning the validity of the statutory attorneys' liens.

The Court has analyzed the submissions of the parties, and evaluated authorities related to the various causes of action. It concludes that entry of summary judgment at the present time on the preference, fraudulent transfer and § 544(b) causes of action is inappropriate. The reasons for that conclusion vary depending upon the theory presented by the Trustee. The Court further concludes that summary judgment is appropriate on the cause of action under § 544(a) of the Code.

### Review of the State Court's Orders

■ A special issue is raised in this case because the "transfer" the Trustee seeks to avoid is not simply the filing or recording of a lien or the granting of a security interest the Trustee believes is improperly perfected. Rather, the transfer is by way of, and embodied in, a state court order. Judicial decisions are entitled to respect from litigants and other courts, in part under the concept of "full faith and credit."

The Trustee, despite much discussion of the case law related to the validity of the liens, doesn't explain how this Court is to reach the point where it may substitute its interpretation of that law for Judge Luster's. Whether or not this Court agrees with the conduct of counsel and the procedures they used; or agrees with the state court as to the propriety of entering lien orders on that basis; or agrees with the purported reach of those orders; or agrees that these kind of orders should be countenanced in non-fund situations; or agrees that Idaho Code § 3–205 provides lien rights to an opponent's counsel in addition to one's own counsel, or gives authority for liens against parties other than the lawyer's own client—is immaterial unless this Court has the jurisdiction and authority to review, and potentially set aside, the state court ruling.

■ State court judgments are entitled to full faith and credit. 28 U.S.C. § 1738. *Koski v. Seattle First Nat. Bank (In re Koski),* 144 B.R. 486, 487, 92 I.B.C.R. 157, 157 (Bankr.D.Idaho 1992). To overcome the respect to which the state court ruling is thus entitled, the contesting party must prove that its suit is proper under applicable state law principles of collateral estoppel.

> The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the

---

6. This property was ultimately found, by the state court, to be the Debtor's separate property.

7. *See,* n. 2, *supra.*

courts of such State ... from which they are taken" 28 U.S.C. § 1738.

*In re Nourbakhsh (Gayden v. Nourbakhsh)*, 67 F.3d 798, 799 (9th Cir.1995) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)). *Nourbakhsh* also notes that this same principle applies when evaluating the collateral estoppel effect of state court judgments in subsequent bankruptcy proceedings. *Id.*

■ As this Court has held, federal courts must give a state court judgment the same preclusive effect as it would be given by the courts of the state rendering the judgment. *In re Baugh*, 97.2 I.B.C.R. 51, 53 (Bankr.D.Idaho 1997) (citing 28 U.S.C. § 1738 and *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). *Baugh* continued:

> In Idaho, a party seeking to invoke the doctrine of collateral estoppel must establish that:
>
> (1) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical with the issue presented in the present action; (3) the issue sought to be precluded was actually adjudicated in the prior litigation; (4) there was a final judgment on the merits in the prior litigation, and; (5) the party against whom the issue is asserted was a party or in privity with a party to the prior litigation.

*Id.* (citing *In re Coryell*, 97.1 I.B.C.R. 11, 11–12 (Bankr.D.Idaho 1997) (quoting *Anderson v. City of Pocatello*, 112 Idaho 176, 183, 731 P.2d 171, 178–79 (1986))); *see also, Koski v. Seattle First Nat. Bank (In re Koski)*, 149 B.R. 170, 174, 93 I.B.C.R. 8, 11 (Bankr.D.Idaho 1992).

■ The Defendants have lien rights by virtue of Judge Luster's orders. The above authorities make clear that such orders will have preclusive effect only to the extent state law provides. Under *Anderson v. City of Pocatello*, preclusive effect requires that the party to be estopped was a party or in privity with a party to the prior litigation. That the Debtor might be estopped to attack the bona fides of the state court lien orders does not mean that the Trustee, cloaked in his Title 11 powers, is similarly estopped. *Koski*, 149 B.R. at 175, 93 I.B.C.R. at 11.

## The Preference Cause of Action

■ Under § 547(b), the Trustee may avoid certain transfers of the Debtor's interests in property which occur within 90 days before filing of the petition for relief, provided a number of conditions are met.

Raeon's lien was entered on May 2, 1997, and it was recorded in the real property records of Kootenai County the same day. Daugherty's lien was entered by the state court on May 9 and recorded on May 14. The original petition was filed August 29, 1997, and the 90th day prior to filing would therefore be May 31, 1997. All of the events occurred more than 90 days before the petition for relief was filed.[8] Consequently, the Trustee may not avoid the transfers as preferences, unless he can establish that one or both creditors were "insiders." *See* §§ 547(b)(4)(B), 101(31). That has not been alleged or established at this time. Summary judgment on this cause of action is not appropriate, and the Plaintiff's motion will be denied.

## The "Fraudulent Transfer" Cause of Action

■ Under certain circumstances, a Trustee can avoid transfers of the Debtor's interest in property, regardless of fraudulent intent,[9] that occur one year before

---

8. The Trustee has not argued that any other event constitutes the transfer for purposes of a preference analysis.

9. The Trustee has not asserted the "actual fraud" provisions of § 548(a)(1) but instead relies on the "constructive fraud" provisions of § 548(a)(2).

filing of the petition for relief. § 548(a)(2). Among the requirements for relief under this section, the Trustee must show that the Debtor

(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B) (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

§ 548(a)(2). The Trustee argues that under § 548(a)(2)(A) no reasonably equivalent value was received by the *Debtor* for the lien securing his *ex-wife's* attorney's fees, and that Raeon's lien is therefore avoidable.

The argument is appealing. However, the Court finds that the record presented to date is inconclusive as to whether, in the context of the divorce litigation and the state court's characterization and division of property, "reasonably equivalent value" was received. The divorce court has the ability, under chapter 7 of Title 32 of the Idaho Code, to adjudicate the nature of community and separate property, and to apportion liability for debts, including attorneys' fees generated in the divorce.

This at least implies that the state court engages in a process that weighs numerous factors, and Judge Luster's Memorandum Decision of July 31, 1997 reflects a great deal of time and effort was spent in his analysis of such factors and the evidence presented by the parties. In this process, the Debtor might have received consideration for the burden imposed by way of liability for his ex-wife's legal fees.

A spouse in the Debtor's position might, and maybe always would, assert that no "reasonably equivalent" value is received for the legal fees he or she is obligated to pay the ex-spouse's lawyer. But here, the Trustee has the burden of proving that this contention is correct in consideration of the entirety of the state court litigation; that burden is particularly high on a motion for summary judgment. Additionally, nothing presented as yet clearly shows that one of the insolvency conditions of § 548(a)(2)(B) is met. The Trustee has not established an entitlement to relief, and summary judgment is inappropriate on the § 548 theory. Plaintiff's motion on this cause of action shall also be denied.

**The § 544 Cause(s) of Action**

The Trustee raises arguments under both § 544(a) and (b). He contends that the liens granted are beyond those which a state court may properly grant under § 3–205.[10]

The Trustee's "Cause of Action No. 1" is brought "under § 544" of the Code, and the Trustee seeks thereby avoidance of the liens of both Defendants as against the escrowed proceeds from the sale of real property. Complaint at para. VIII.[11] The

10. In response, Defendants expend much energy in support of the concept that a state court may generally impose liens in divorce actions under various provisions of chapter 7 of Title 32 of the Idaho Code. Even assuming such an argument is meritorious, it has no applicability to this action. The Defendants' own motions here sought liens solely under § 3–205; the state court orders purport to grant the liens under that section, and no other. This Court rejects the contention that § 32–701, *et seq.*, "enlarge and clarify" the

scope of § 3–205. That assertion is not supported by the language of the statutes or the case law and, more to the point, is not relevant given the explicit basis for the subject orders.

11. While the cause of action under § 544(a) attacks the liens only insofar as they are asserted against these funds, the Court's analysis of the liens' validity is based on the liens themselves, and not on the nature of the par-

provision cited by the Trustee encompasses more than one type of action. In briefing, the Trustee advances arguments under § 544(a)(1), 544(a)(2), and 544(b). These subsections provide:

§ 544. **Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; . . .

(b) (1) . . . [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

**A. Claims under § 544(b)**

 The "strong-arm" powers of § 544(a) operate without regard to the existence of an actual creditor who could seek to avoid a transfer under state law.

ticular property of the Debtor encumbered

However, § 544(b) requires pleading and proof of the existence of such an unsecured creditor, as well as an explanation of how applicable state law grants a right of transfer avoidance to that creditor. A typical use of § 544(b) is avoidance of transfers under state enactments of the Uniform Fraudulent Transfer Act such as Idaho Code § 55–914. *See, e.g., Spurgeon v. Hairston (In re Hairston)*, 97.3 I.B.C.R. 70 (Bankr.D.Idaho 1997) (use of Idaho Code § 55–914); *Rakozy v. Giampedraglia (In re Giampedraglia)*, 96.1 I.B.C.R. 7 (Bankr.D.Idaho 1996) (use of Idaho Code § 55–906, 913 and 914).

 In this case, the Trustee has not alleged the existence of an actual unsecured creditor with a right of transfer avoidance under state law as to the two subject liens, nor has he established the relevant and controlling authorities under Idaho law providing such an avoidance power. There is no basis for entry of summary judgment under § 544(b) on this record.

**B. Claims under § 544(a)**

Section 544(a)(1) gives the Trustee the powers of a hypothetical judicial lien creditor as of the date of the commencement of the case. That status entitles the Trustee to contest lien priority as against other allegedly secured creditors.

Having previously determined that the Trustee is not estopped from attacking the subject liens, the question then becomes one of whether those liens would be valid as against a competing judicial lien creditor. The Trustee contends the Raeon and Daugherty liens are invalid since they exceed the proper limits upon such statutory liens under § 3–205 and precedent construing that statute.

This Court agrees, and finds and concludes that the Defendants' liens are not valid and that they may be avoided.

thereby.

The first inquiry, of course, is to the language of § 3–205, which provides:

**Attorneys' fees—Lien.**—The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, *the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof* in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment.

(Emphasis supplied.)

■ The plain language of this section allows only for a lien in favor of a lawyer against that lawyer's own client. There is nothing in § 3–205 or case law that authorizes an attorneys' lien in favor of an *opponent's* lawyer. *Frazee v. Frazee*, 104 Idaho 463, 465, 660 P.2d 928, 930 (1983), expressly rejected the attempted assertion of a charging lien "against the property of the opposing party." Raeon's lien against the Debtor is therefore improper.[12]

Daugherty was the Debtor's lawyer in the state court action, so the possibility of a valid attorneys' lien under § 3–205 does exist. The question is whether under the language of that statute and the precedent, it was properly granted.

■ The language of § 3–205 grants an automatic lien on a "fund" created by the efforts of the attorney, so long as the five specific elements set forth in *Skelton v. Spencer*, 102 Idaho 69, 625 P.2d 1072 (1981), are satisfied.[13] *See also, In re Secaur*, 83 I.B.C.R. 175, 176–7 (Bankr.D.Idaho 1983). The function of the statute is to give an attorney an interest in the fruits of his labors. *Skelton*, 102 Idaho at 75, 625 P.2d at 1078. But here, as was the case in *Fitzgerald v. Colonial Savings & Loan (In re Karterman)*, 97.4 I.B.C.R. 115 (Bankr.D.Idaho 1997), there was no "fund" created by the efforts of Daugherty.

■ It is true, as discussed in *Secaur*, that Idaho case law appears to recognize that a valid § 3–205 lien might arise in a "non-fund" situation, *provided* a court properly adjudicates the lien and "perfects" it by judgment. *Secaur*, 83 I.B.C.R. at 177–8 (discussing *Frazee*.)

Frankly, *Frazee* appears to this Court to be inconsistent with *Skelton* and with the history, nature and function of attorneys' charging liens as there described. *Frazee* certainly appears inconsistent with the plain language of the statute. And *Frazee* provides little guidance as to how "non-fund" liens are properly created, noting only that an attorney must "take affirmative steps in an adjudicative process to perfect and reduce his lien to a judgment or order of the court." 104 Idaho at 466, 660 P.2d at 931. Nothing specifies how the client is to be notified of or afforded an opportunity to contest the attempt by his own lawyer to assert a creditor's lien—an effort which at a minimum raises conflict of interest concerns.[14]

---

**12.** The Court also finds that creation of a lien against someone other than the lawyer's own client (for example, Daugherty's lien against Sandra or the S corporation) is outside the language of the statute and not supported by the case law. But in the instant litigation, the concern is only with the liens asserted against the Debtor and his estate. That the liens may also be in excess of authority and therefore invalid when granted against non-debtors are matters that need not be resolved by this Court.

**13.** They are: (1) a fund is before the court or otherwise available for distribution on equita-

ble principles; (2) the services of the attorney primarily or substantially operated to secure that fund; (3) it was agreed, between the client and lawyer, that the lawyer would look to the fund and not the client for payment; (4) the lien is limited to the costs, expenses and fees incurred in the litigation creating the fund; and (5) there exist equitable considerations necessitating recognition of the lien. 102 Idaho at 76, 625 P.2d at 1079.

**14.** Even *Frazee*, while generally recognizing the possibility of non-fund charging liens, not-

Such issues are very much apparent in this case. Daugherty's motion was heard on the very same day it was filed. The motion reflects service only on Raeon. By asserting a motion for imposition of a lien on his client's property, Daugherty took a position adverse to his client, and resolution of the motion requires due process be afforded his client. The "adjudicative process" here is suspect: the state court, on 3 days' notice for Raeon and less than 1 days' notice for Daugherty, imposed liens on all of the Debtor's property, separate and community. Even if there is a plausible argument that Daugherty could seek a lien in this "non-fund" situation, the fact that the liens reached property of non-clients, and that a lien was simultaneously granted against the Debtor in favor of someone other than his own attorney, impeach the bona fides of the process and the legitimacy of either order.

The Idaho Court of Appeals recently emphasized the need for due process in creation and enforcement of such attorneys' liens. In *Dragotoiu v. Dragotoiu,* 1998 WL 905034 (Idaho Ct.App.1998), the court held:

> When seeking enforcement of an attorney's lien, due process must be afforded. *Frazee,* 104 Idaho at 466, 660 P.2d at 931. The right to procedural due process guaranteed under both the Idaho and United States Constitutions requires that a person involved in the judicial process be given meaningful notice and a meaningful opportunity to be heard. *Rudd v. Rudd,* 105 Idaho 112, 115, 666 P.2d 639, 642 (1983).

1998 WL 905034 at *3. In *Dragotoiu,* the client was served with his lawyer's motion for enforcement of lien ten days before hearing on that motion, which the Court found to be "meaningful notice" and the client at hearing testified, cross-examined the lawyer, and presented argument, all of which was found to reflect that the client

ed that "ethical and policy considerations" are implicated. 104 Idaho at 465, 660 P.2d

had a "meaningful opportunity to be heard." The situation in the instant case falls short of that validated in *Dragotoiu.*

■ The Court has not found authority that directly addresses the type of process here used by both Raeon and Daugherty to obtain their liens. "[W]hen a decision turns on applicable state law, and the highest state court has not adjudicated the issue, this Court must determine what decision the highest court would reach if faced with the issue." *Capital Development Co. v. Port of Astoria,* 109 F.3d 516, 519 (9th Cir.1997) (citation omitted). This Court concludes that, if faced with the exact situation presented in the present case, and in light of the articulated limits on § 3–205 attorneys' liens, particularly in non-fund situations, and particularly in light of the concern over due process as addressed in *Skelton, Frazee* and *Dragotoiu,* the Idaho appellate courts would find the Raeon and Daugherty liens invalid and refuse to enforce them.

The Trustee is, therefore, entitled to judgment under § 544(a)(1).

## CONCLUSION AND ORDER

For the foregoing reasons, the Court DENIES the Plaintiff's Motion for Summary Judgment as to the preference, fraudulent transfer and § 544(b) causes of action, and GRANTS the motion as to the cause of action under § 544(a). The Plaintiff shall submit a proposed judgment in accord herewith.

at 930 (discussing *Ross v. Scannell,* 97 Wash.2d 598, 647 P.2d 1004 (1982)).