[No. 8003–2–I.   Division One.   April 13, 1981.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent,* v. DONALD H. DILLON, *Appellant.*

*Martin D. Fox,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Charles R. Bush, Assistant,* for respondent.

CORBETT, J.—In November 1974, Dillon was criminally assaulted, receiving injuries for which he filed a claim with the Department of Labor and Industries (Department), pursuant to RCW 7.68, the victims of crimes compensation act. Over time, he received a total of $11,493.95 in benefits. In December 1974, Dillon filed a personal injury action against his assailant, and in May 1978, recovered a $250,000 judgment. Dillon then compromised the judgment by sign-

ing a covenant not to execute in consideration of $15,000. The assailant was otherwise judgment proof. Pursuant to RCW 7.68.050, the Department then demanded that Dillon refund the $11,493.95 in benefits paid to him. Dillon refused, but deposited $11,493.95 in a savings account, against which Dillon's attorney filed a claim of lien. The Department commenced this action for restitution of the benefits and recovered a judgment for the full amount. Dillon has appealed.

The 1973 version of RCW 7.68.050, which is controlling here, provides in part:

> No right of action at law against a person who has committed a criminal act, for damages as a consequence of such act, shall be lost as a consequence of receiving benefits under the provisions of this chapter. In the event any person receiving benefits under this chapter additionally seeks a remedy for damages from the person or persons who have committed the criminal act resulting in damages, then and in that event the department *shall be subrogated to and have a lien upon any recovery so made* to the extent of the payments made by the department to or on behalf of such person under this chapter.

(Italics ours.) Dillon contends that the statute creates a right of subrogation and therefore the Department can recover only the excess received from the wrongdoer which remains after Dillon is compensated for his loss, citing *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978).

■■ A statutory right to reimbursement (*i.e.*, the Department's lien on recovery) is not to be diminished absent an express statutory provision. We may not do so under the guise of statutory construction. *Courtright v. Sahlberg Equip., Inc.*, 88 Wn.2d 541, 544–45, 563 P.2d 1257 (1977). Equitable principles cannot be asserted to establish equitable relief in derogation of statutory mandates. *Norlin v. Montgomery,* 59 Wn.2d 268, 273, 367 P.2d 621 (1961). This is recognized by the *Thiringer* case relied upon by Dillon, where it was stated:

> Subrogation is an equitable doctrine, and an examination

of the cases cited by both parties shows that courts, *unless otherwise directed by statutory requirements,* attempt to resolve each case upon a consideration of the equitable factors involved, guided by the principle that a party suffering compensable injury is entitled to be made whole but should not be allowed to duplicate his recovery.

(Italics ours.) *Thiringer, supra* at 220. Therefore statutory interpretation and not the equitable doctrine of subrogation is determinative. The statute is clear and unambiguous. The Department is entitled to a lien upon the amount of recovery, whether or not the victim has recovered in full for his injuries.

Dillon then argues that the Department had multiple options to relieve him of the burden and expense of litigating his personal injury action. He refers to RCW 7.68.120, which provides in part:

Any person who has committed a criminal act which resulted in injury compensated under this chapter may be required to make reimbursement to the department as hereinafter provided.

(1) Any payment of benefits to or on behalf of a victim under this chapter creates a debt due and owing to the department by any person found to have committed such criminal act in either a civil or criminal court proceeding in which he is a party: . . .

(2) Upon being placed on work release pursuant to chapter 72.65 RCW, or upon release from custody of a state correctional facility on parole, any convicted person who owes a debt to the department as a consequence of a criminal act may have the schedule or amount of payments therefor set as a condition of work release or parole by the department of social and health services or board of prison terms and paroles respectively, subject to modification based on change of circumstances. Such action shall be binding on the department.

Dillon's contention is that because the Department failed to utilize its alternative statutory rights to collect from the assailant and chose instead to recover from monies received in the personal injury action, the State is guilty of laches or is equitably estopped to assert its claim against Dillon.

Dillon argues that assets the assailant disposed of while in prison could have been applied toward the restitution. No apposite authority is cited for the contention of Dillon and we find none. The Department's right to seek reimbursement is discretionary. The action against the recovery received by Dillon, brought pursuant to RCW 7.68.050, is in no way made contingent upon the Department's right of recovery against the assailant pursuant to RCW 7.68.120. The Department has no duty to seek recovery from the assailant; therefore the failure to act did not give rise to laches or estoppel.

■ Dillon also assigns error to the failure of the trial court to award attorney's fees. At the time of Dillon's injury, no right to recover attorney's fees was given by the victims of crimes compensation act. In 1973, RCW 7.68 was enacted. Section 7.68.050 was first amended in 1977, and again in 1980, to incorporate the workers' compensation act third party procedure (enacted in 1977), which does provide for attorney's fees (RCW 51.24.060(1)(a)). Examining this statutory scheme, it appears that the legislature was aware of the omission in the victims of crimes compensation act and did not intend to provide for the payment of attorney's fees before 1980. In construing the statutory scheme, we are required to consider the sequence of all statutes relating to the same subject matter. *Goodman v. Bethel School Dist. 403,* 84 Wn.2d 120, 127, 524 P.2d 918 (1974); *In re Estates of Donnelly,* 81 Wn.2d 430, 502 P.2d 1163, 60 A.L.R.3d 620 (1972). It is neither our function nor prerogative to modify legislative enactments and we decline to do so now. *Anderson v. Seattle,* 78 Wn.2d 201, 202, 471 P.2d 87 (1970).

■ Appellant next argues that when he reached a settlement with the assailant, he created a "common fund" and is therefore entitled to attorney's fees and costs incurred in creation of the fund. The general rule is that in absence of statute or recognized ground of equity, the court has no power to award attorney's fees as part of the costs of litigation. *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 797–98, 557 P.2d 342 (1976). *PUD 1 v. Kottsick,* 86 Wn.2d 388, 389, 545

P.2d 1 (1976); *Swift v. Island County,* 87 Wn.2d 348, 362, 552 P.2d 175 (1976); *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 113–14, 111 P.2d 612 (1941). Appellant's reliance upon the "common fund" doctrine as an equitable exception is misplaced. The doctrine has not been extended to reach collection of a tort judgment upon which there is impressed a statutory lien. The Washington cases generally deal with a large class or group of persons with a similar claim. Attorney's fees have been awarded to a member of a group who presses a claim which benefits the others as well as the litigant and also protects, preserves or creates a "common fund". The doctrine has been applied in actions which secured the return of valuable stock to a corporation; *Baker v. Seattle–Tacoma Power Co.,* 61 Wash. 578, 112 P. 647 (1911); to preserve the assets of an insolvent corporation for the benefit of a lawful creditor, *Hein v. Forney,* 164 Wash. 309, 2 P.2d 741, 78 A.L.R. 631 (1931); to preserve partnership assets and prevent a partner from further commingling the partnership funds with separate funds, *Hsu Ying Li v. Tang, supra;* to compel labor union officials to maintain proper accounting records and to make a full accounting, *Grein v. Cavano,* 61 Wn.2d 498, 379 P.2d 209 (1963); to discover hidden assets for the benefit of the whole estate, *Drain v. Wilson,* 117 Wash. 34, 200 P. 581 (1921); to resolve the meaning and legal effect of ambiguous language used by the settlor in a trust instrument, *Peoples Nat'l Bank v. Jarvis,* 58 Wn.2d 627, 364 P.2d 436 (1961); and to prohibit the disbursement of taxpayers' funds pursuant to an unconstitutional statute, *Weiss v. Bruno,* 83 Wn.2d 911, 523 P.2d 915 (1974). It has not been applied to the factual situation in this case and we decline to so extend the doctrine.

Appellant also claims it was error for the trial court to quash his claim of lien filed pursuant to RCW 60.40.010, which provides:

An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided: (1) Upon the papers of his client, which have come into

his possession in the course of his professional employment; (2) upon money in his hands belonging to his client; (3) upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of lien to that party; (4) upon a judgment to the extent of the value of any services performed by him in the action . . .

The claim of lien did not arise out of the tort action wherein the $250,000 judgment was obtained, but was asserted for services rendered to compromise the judgment and collect the $15,000. In pertinent part, the claim of lien stated:

> YOU, AND EACH OF YOU, ARE HEREBY NOTIFIED that I, MARTIN D. FOX, claim an attorney's lien of 33–1/3% of $11,493.95 or $3,827.48 for legal services rendered on behalf of the State of Washington in collection [*sic*] said monies from Wallace C. Scribner and Wilma Scribner.

No attorney–client relationship existed between Dillon's attorney and the State. Therefore the money in the bank is not subject to a lien pursuant to RCW 60.40.010(2), nor is RCW 60.40.010(3) applicable because the money is in the hands of Dillon's bank, not an adverse party. The lien was properly quashed.

Affirmed.

SWANSON and WILLIAMS, JJ., concur.