[No. 47861–9. En Banc. July 8, 1982.]

LAWRENCE M. ROSS, *Appellant,* v. WILLIAM G. SCANNELL, *Respondent.*

*Kenneth S. Kessler,* for appellant.

*Weinrich, Gilmore & Adolph, P.S., A. Peter Parsons,* and *Scott L. Schmidtman,* for respondent.

DIMMICK, J.—This case was certified here by the Court of Appeals, Division Three. The issues as certified are:

1. Does RCW 60.40.010 (Washington's attorney lien statute) allow an attorney to file a lien on the real property of his client?

2. Can an attorney recover fees, based on a contingency fee agreement if, prior to full completion of the contingency, the attorney ceases to render the required legal services for his client?

3. Can an attorney recover any fees if the attorney has acted unethically in the course of providing the services for which the fees are claimed due?

We answer the first two questions in the negative, and are unable, given the state of this record, to answer the third.

Appellant Lawrence M. Ross is a lawyer practicing in Tacoma and respondent/cross appellant William G. Scannell, a former business partner and client of Ross, is a real estate broker in Pierce County. The facts are as follows:

In December 1976 Scannell entered into negotiations with Wayne B. Knight and others for the purchase of 1,410 acres of land in Klickitat County and deposited $2,500 as earnest money. Scannell then contacted Ross and inquired if he knew of any investors who might be interested in the property. Two of Ross' clients, Mr. Topel and Mr. Campbell, his law partner, Mr. Griffies, a Mr. McKinney, and Ross decided to become partners in the joint venture for the purchase of the land.

The land purchase was not completed due to the sellers' refusal and/or inability to clear title to all the acreage and sell to the joint venture. Thus ended the proposed joint venture. Acting upon Ross' advice, Scannell commenced an action against sellers entitled Scannell v. Knight, et al. (Klickitat County cause 12828) in which Scannell sought specific performance and damages. By agreement of counsel, the venue of the action was changed to Pierce County where it was tried. Scannell and Ross orally agreed at the outset of the action that Ross would receive a contingent fee.

After the action against sellers had commenced, one of the former joint venturers, McKinney, commenced an action against Scannell for breach of fiduciary duty. Ross agreed to represent Scannell in this action simultaneously with the Knight action.

On November 3, 1977, the oral fee agreement was reduced to writing in a letter from Ross and acknowledged by Scannell. The letter stated in pertinent part:

I have agreed to represent you on such basis with the understanding that all actual costs incurred will be paid by yourself, but that payment of attorney fees will be

based on the result of each action. It is my understanding that any damages awarded in connection with either action over and above costs incurred will be shared with you receiving two–thirds of such damages and I to receive one–third.

It is understood, however, that as the recovery may involve the granting of a specific performance for the purchase of a certain portion of the property, that in that event we will share on the same proportionate basis any commission, finder's fee or other similar fee which you receive in connection with the sale of that portion of the property or its placement with the venture or partnership.

Early in the Knight litigation Ross realized he was potentially a key witness in the case. Although disputed, Scannell testified that he told Ross of this possibility shortly after the transaction failed to close. Ross assured his client that he could serve as both witness and attorney and continued work on the case. Finally, just prior to trial Ross retained the services of Mr. Warren Peterson on an hourly basis to try the case. Ross assisted Peterson during the trial although he was the principal witness for Scannell.

The trial court entered judgment for Scannell in the Knight matter. In addition to granting specific performance for 960 acres of the 1,410 originally contracted for, damages were awarded in the amount of $32,499, plus the return of the $2,500 earnest money (plus interest) originally deposited by Scannell.

In October 1978, Scannell entered into negotiations for the sale of a portion of the property obtained in the Knight litigation. Ross was privy to those negotiations and learned that his client was about to realize a substantial profit upon the resale of the property. Scannell offered Ross a one–third equity participation in the property with full credit for fees of one–third of the damages which had been applied toward the purchase price. At this time Ross informed Scannell that he was entitled to one–third of the profits that Scannell might derive from the sale, as well as one–third of the damages. Ross continued to insist upon

these profits even though, as he admitted, the contingency fee agreement letter that he drafted made absolutely no mention of profits. Scannell disputed that one–third of the profits from the sale of the land should go to Ross, absent further contribution from him toward the purchase price of the property.

After this dispute as to fees arose Ross asked Topel and Campbell, two of the former joint venturers, to pay the fees owed trial counsel Peterson. Although Ross asserted that he did not represent Topel and Campbell, he did state that he believed there was a serious question that Scannell was in fact representing their interests in the Knight action and that Scannell held the property subject to a resulting trust in favor of Topel and Campbell. Apparently Ross did not discuss with Scannell or Topel and Campbell the possible problems regarding any conflict of interests in their claims. Topel and Campbell are currently suing Scannell alleging that they each are entitled to one–third interest in the property.

Scannell experienced difficulty in obtaining a contract for the conveyance of the property in accordance with the judgment requiring specific performance and Mr. Knight refused to grant necessary easement across adjoining property. In view of their dispute over fees, Ross did not represent Scannell in clearing up this matter. Thus, in December 1978 Scannell had still not obtained title to the property.

Scannell reluctantly paid Ross' unreimbursed costs and retained the services of the law firm of Johnson, Lane & Gallagher who after several posttrial hearings obtained a properly executed contract with an easement. Ross testified that the services provided by the new law firm were a part of the litigation and he would have performed them if there had not been a falling–out with regard to the fees. Scannell paid Johnson, Lane & Gallagher $3,023 in connection with the completion of the specific performance action.

Shortly after Scannell refused to agree to give Ross one–third of any profits from the future sale of the property, Ross filed a claim of attorney's lien which included the legal

description of the property involved in the Knight action. Ross filed his claim with the Pierce County Superior Court. Then, with the admitted purpose of clouding title to the property, Ross mailed a copy of the claim of lien and property description to the title company in Klickitat County and filed the lien with the Klickitat County Superior Court after obtaining a new cause number in Klickitat County and filing an abstract of the Pierce County judgment.

At that time Scannell had entered into an agreement with prospective purchasers to sell 790 of the 960 acres at a price of $456 per acre. Ross computed the amount of his claim of lien based upon this sale price and claimed a total of $92,551.61 attorneys fees. Due solely to the cloud on the title caused by Ross' unadjudicated claim of attorney lien, Scannell was unable to deliver marketable title and the purchasers canceled the transaction.

Ross sued Scannell in Klickitat County to collect the contingent fee and foreclose the attorney's lien. Scannell counterclaimed for damages resulting from the loss of sale and for slander of title. The property had not sold at the time of trial, and due to economic conditions and local governmental restrictions, the land had a reduced value of $400 per acre.

The trial court found in favor of Ross attaching the lien and clouding title to the real property. The court, however, did not uphold Ross' percentage–of–profits theory of attorneys fees for $92,551.61, and instead awarded him $21,443 pursuant to the contingent fee agreement. The court accordingly denied Scannell's counterclaim. This appeal by both parties followed.

I

The first issue, never before addressed by this court, is whether RCW 60.40.010 allows an attorney to file a lien on the real property of a client. The statute provides:

An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided: (1) Upon the papers of his client, which have come into

his possession in the course of his professional employment; (2) upon money in his hands belonging to his client; (3) upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of the lien to that party; (4) upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

This statute, in existence since 1881, provides a delineated and limited statutory attorney's lien designed to be a tool in the collection of fees. The statute in part is merely declaratory of the general or retaining lien recognized at common law. This possessory and passive lien gives an attorney the right to retain papers and documents which come into the attorney's possession during the course of his professional employment. It is a possessory and passive lien and is not enforceable by foreclosure and sale. *See Gottstein v. Harrington,* 25 Wash. 508, 65 P. 753 (1901); Stevens, *Our Inadequate Attorney's Lien Statutes—A Suggestion,* 31 Wash. L. Rev. 1 (1956).

The statute, however, also goes beyond the common law in recognizing the special or charging lien. This lien is upon the judgment obtained for the client as a result of the attorney's professional services to secure his compensation. RCW 60.40.010(4). Such a lien has the capacity to be adjudicated and enforced. *See State ex rel. Angeles Brewing & Malting Co. v. Superior Court,* 89 Wash. 342, 154 P. 603 (1916); *Gottstein;* Stevens, *supra.*

Many states either do not statutorily recognize attorneys' liens or only recognize the general or retaining lien.[1] The

---

[1]Arizona, California, Connecticut, Delaware, Florida, Hawaii, Kansas, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, New Mexico,

statutory provisions of the states recognizing charging liens on judgments vary. A few states specifically allow the lien to attach to real property.[2] Others provide for a charging lien on the client's cause of action or judgment and any proceeds therefrom or property recovered.[3] Five states, including Washington, recognize a charging lien upon the judgment only.[4]

 One of the states with a statute similar to ours has held that the attorney lien statute must be strictly followed and not judicially expanded to reach real property as fruits of a judgment. *Keehn v. Keehn,* 115 Iowa 467, 88 N.W. 957 (1902). We agree with this analysis. As noted above RCW 60.40.010(4) is in derogation of the common law and therefore must be strictly construed. *See A.A.C. Corp. v. Reed,* 73 Wn.2d 612, 440 P.2d 465 (1968). If the Legislature had intended attorneys' liens to attach to real property as proceeds of a judgment, it would have included a provision to that effect as other states have done. We note that the Legislature has not left an attorney remediless in collecting fees after the attorney–client relationship has been terminated. He has, among other remedies afforded general creditors, the ability to reduce his fees to judgment and thus subject his client's real property to a judgment lien pursuant to RCW 4.56. If additional measures are nec-

---

North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Texas, Vermont, West Virginia, and Wyoming.

[2]Ala. Code § 34–3–61 (1967); Ga. Code Ann. § 9–613 (1973); Minn. Stat. Ann. § 481.13 (West 1971); Or. Rev. Stat. §§ 87.445, .490 (1979).

[3]Ark. Stat. Ann. § 25–301 (1962); Idaho Code § 3–205 (1979); Ill. Ann. Stat. ch. 13, § 14 (Smith–Hurd 1963); Mass. Gen. Laws Ann. ch. 221, § 50 (West 1958); Mont. Code Ann. § 37–61–420 (1981); Nev. Rev. Stat. § 18.015 (1979); N.H. Rev. Stat. Ann. § 311.13 (1966); N.J. Stat. Ann. § 2A:13–5 (West 1952); N.Y. Jud. Law § 475 (McKinney 1968); R.I. Gen. Laws §§ 9–3–1, 9–3–2 (1970); Tenn. Code Ann. § 23–2–102 (1980); Utah Code Ann. § 78–51–41 (1977); Va. Code § 54–70 (1978); Wis. Stat. Ann. § 256–36 (West 1971).

[4]Alaska Stat. § 34.35.430 (1981); Ind. Code Ann. § 33–1–3–1 (Burns 1975); Iowa Code Ann. § 610.18 (West 1975); Ky. Rev. Stat. § 376.460 (Supp. 1980).

essary, the attorney may post a bond and proceed with a writ of attachment pursuant to RCW 7.12. The attorney must, of course, balance these rights with the Code of Professional Responsibility EC 2-23:

> A lawyer should be zealous in his efforts to avoid controversies over fees with clients and should attempt to resolve amicably any differences on the subject. He should not sue a client for a fee unless necessary to prevent fraud or gross imposition by the client.

The analysis requiring strict construction of the attorney lien statute is especially persuasive in light of the dangers of our countenancing the practice of attorneys attaching liens to real property for unadjudicated and unliquidated claims. Although we recognize the common problems faced by attorneys in collecting their well deserved fees, the reasons for our hesitancy are apparent. The result of our approving the practice would allow members of the bar to cloud title to real property with "claims of attorney lien" without resort to any adjudication of such claims. The potential for economic coercion by attorneys is obvious. In today's economic setting a client may well be forced to settle the attorney's claim for fees, no matter how unfounded, simply to gain the ability to convey, lease or otherwise utilize the "liened" property. A similar objection was recognized in *Humphrey v. Browning*, 46 Ill. 476 (1868), where the Supreme Court of Illinois held that if unadjudicated liens were allowed for the professional services of lawyers, no one could foresee the difficulties and confusion that would result, as every tract of land which had been the subject of litigation would lose most of its exchangeable value from an apprehension of some latent lien in favor of an attorney.

In fact, the only state with a statute similar to ours that has allowed the practice recognized these dangers but discounted them in favor of giving attorneys an additional tool to collect fees.[5] The Colorado Supreme Court in *Fillmore v.*

---

[5] After the Supreme Court of Colorado decided to allow unadjudicated attor-

*Wells,* 10 Colo. 228, 15 P. 343 (1887) stated:

> Again, [an] objection . . . is thus stated in *Forsythe v. Beveridge,* 52 Ill. 268: "There would be cases in which a very unreasonable portion of the fruits would be demanded by the attorney, and collected under the pressure he could bring to bear upon his client." This objection is declared by the learned court to be of "great weight."

10 Colo. at 235. We are convinced that the dangers of extending our statute beyond its terms are too great to discount.

The dangers of allowing attorneys to file liens for unadjudicated, unliquidated claims thus clouding title are especially clear in the instant case. The contingent fee contract relied upon is ambiguous. Ross did not try the action due to a conflict of interest which he should have been aware of before accepting the case. After the trial, difficulties arose and Ross abandoned the case before securing title to the property for his client. Another attorney had to complete the case. Throughout the action Scannell expressed disagreement as to the amount of attorney fees owed. Ross filed a lien in Pierce County (where the cause was tried by agreement of the parties), in Klickitat County (where the land was located), and with the title company, with the admitted purpose of clouding title. Purchasers canceled a transaction with Scannell when they were denied a clear title and since that time the land has decreased in value. In addition, less than one–quarter of Ross' lien was allowed at trial.

In an age when the ethics of the bar are scrutinized in every quarter, we must hold that the result reached by the trial court is one neither contemplated by the attorney lien statute nor in accord with the public interest. Accordingly, we remand this matter to the trial court to determine whether Ross' actions constituted slander of title as defined

---

neys' liens to attach property, *Fillmore v. Wells,* 10 Colo. 228, 15 P. 343 (1887), the Legislature amended the statute to reflect that holding extending the lien to "any" property. Colo. Rev. Stat. § 12–5–119 (1978).

in *Lee v. Maggard,* 197 Wash. 380, 85 P.2d 654, 87 P.2d 106 (1938).

## II

The second issue is whether an attorney can recover fees based on a contingency fee contract if, prior to full consideration of the contingency, the attorney ceases to render the required legal services for his client. We hold that under the circumstances of this case an attorney may not recover on the contract but must seek recovery of fees on the theory of quantum meruit.

The letter agreement stated that if the court granted specific performance, attorney fees were to be based upon a commission or fee received by Scannell upon his selling or otherwise transferring the property. The parties obviously agreed that Ross would not only represent Scannell in obtaining the judgment for specific performance but also in finalizing the transfer of the land. Ross in his testimony, in fact, admitted that such services would have been performed by him pursuant to the contract. After trial, wherein Scannell was represented by Peterson and not Ross, the parties became involved in an argument over litigation costs and fees. At this point Scannell contacted another law firm to complete the transaction. It is not clear from the record whether Ross refused to continue performance until the controversy was resolved or whether Scannell picked up the files and took the matter to other lawyers, precluding Ross from continuing. In any event, other counsel completed the task of obtaining a necessary easement and a contract for conveying the land. Ross points out that he did complete the defense of the McKinney suit by getting the complaint dismissed, but it is to be remembered that he accepted this matter after the original contingent fee arrangement was made and agreed to defend it for no additional fees.

The settled law in this state is expressed in *Ramey v. Graves,* 112 Wash. 88, 91, 191 P. 801 (1920):

The rule is that, where the compensation of an attorney

is to be paid to him contingently on the successful prosecution of a suit and he is discharged or prevented from performing the service, the measure of damages is not the contingent fee agreed upon, but reasonable compensation for the services actually rendered.

This general rule has been clarified throughout the years. We have noted that "damages" was an inexact use of terms and was intended to mean merely "recovery." *Wright v. Johanson*, 132 Wash. 682, 233 P. 16, *adhered to on reh'g*, 135 Wash. 696, 236 P. 807 (1925). In *Cavers v. Old Nat'l Bank & Union Trust Co.*, 166 Wash. 449, 7 P.2d 23 (1932), we quoted the general rule and held that the case at bar was not one in which an attorney had been discharged "after completing or substantially completing" the agreed services. *Cavers*, at 452.

We recognize as the court did in *Cavers* that the general rule does not necessarily foreclose recovery of fees pursuant to a contingency fee contract if an attorney substantially performs the contingency. However, the instant case does not present such a situation. There was no express finding by the trial court that Ross substantially completed performance of the contract. It is apparent that Ross did not fully or substantially perform the contingency agreed upon by the parties.

Thus, we conclude that if Ross is entitled to attorney fees, the measure of those fees is not the contingent fee agreed upon but the reasonable value of the services rendered. We cannot determine the value of the services from the record and remand this matter to the trial court.

## III

The last issue certified inquires whether an attorney who has acted unethically in the course of providing services is entitled to any fees at all. We are unable to determine from the record that any of the questions of unethical conduct raised in Scannell's brief were presented to the trial court.

The charges of unethical conduct herein are grave. Scannell asserts that Ross violated: CPR DR 2-106 prohibiting an attorney from collecting an illegal or clearly excessive

fee; CPR DR 5–103 prohibiting an attorney from acquiring a proprietary interest in the client's cause of action; CPR DR 5–102(A) requiring an attorney to withdraw from the conduct of the trial if the lawyer learns or it is obvious that he ought to be called as a witness on behalf of his client unless such testimony falls within the exceptions listed in CPR DR 5–101(B); CPR DR 5–105 restricting an attorney from representing multiple clients if his independent professional judgment is impaired; and CPR DR 5–107 requiring an attorney to avoid influence by others than his client. Such charges are normally heard by a disciplinary committee of the Washington State Bar Association. However, a trial court may consider such allegations in determining attorneys fees.

Accordingly, on remand we instruct the trial court to consider the charges of unethical conduct in relation to several principles enunciated by this court in determining the amount of fees due Ross. Professional misconduct may be grounds for denying an attorney his fees. *Yount v. Zarbell,* 17 Wn.2d 278, 135 P.2d 309 (1943). In addition, as stated in *Dailey v. Testone,* 72 Wn.2d 662, 664, 435 P.2d 24 (1967):

> When an attorney is guilty of fraudulent acts or gross misconduct in violation of a statute or against public policy, the client may have a complete defense to the attorney's action for fees.

In sum, we reverse and remand this action to the trial court to determine whether Ross' actions constituted slander of title and what, if any, damages Scannell is entitled to receive. Upon remand we also instruct the trial court to determine what, if any, fees are owed Ross upon a theory of quantum meruit, and not on the ambiguous, uncompleted contingent fee agreement.

BRACHTENBACH, C.J., UTTER, DOLLIVER, WILLIAMS, and DORE, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ROSELLINI, J. (dissenting)—The majority reads the attor-

ney lien provision out of RCW 60.40.010(4). The rationale for so doing is based on an improbable assumption. The majority states on page 606:

> The result of our approving the practice [RCW 60.40-.010(4)] would allow members of the bar to cloud title to real property with "claims of attorney lien" without resort to any adjudication of such claims. The potential for economic coercion by attorneys is obvious. In today's economic setting a client may well be forced to settle the attorney's claim for fees, no matter how unfounded, simply to gain the ability to convey, lease or otherwise utilize the "liened" property.

I cannot conceive of an attorney violating his oath of office and subjecting himself to a disciplinary proceeding by doing what is suggested by the majority's rationale. In my opinion, attorneys have high professional and ethical standards and would not jeopardize the standards nor their right to practice law under these circumstances.

> An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided: . . . (4) upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

RCW 60.40.010(4) in pertinent part.

If the words "upon a judgment to the extent of the value of any services performed by [an attorney]" mean anything, they mean that the lien reaches the fruits of the judgment. There is nothing in them which confines their scope to money judgments.

It is true that subsections 1 and 2 of the attorney lien statute are possessory liens. However, under subsections 3 and 4 nonpossessory liens are created.

Subsection 3 provides that an attorney has a lien for his

compensation

> upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of the lien to that party[.]

Many liens are nonpossessory, *e.g.,* RCW 60.04, mechanics' and materialmen's liens; RCW 60.14, lien for agricultural dusting or spraying; RCW 60.22, lien for furnishing fertilizers, pesticides, weed killers; RCW 60.24, lien for labor and services on timber and lumber. These are nonpossessory liens and do not appear to have caused any of the dire consequences envisioned by the majority.

The attorney's lien on a judgment can be filed only where an attorney was successful in obtaining the judgment. The trial record discloses that after judgment was entered in the Pierce County trial action, Ross and Scannell became involved in an argument over litigation costs and the fee agreement. Ross had successfully completed the defense of the McKinney suit by getting the complaint dismissed. The question whether there was incomplete performance by Ross was resolved by the trial court here in favor of the attorney. While we would have preferred a more detailed finding on the issue, the trial court stated in finding of fact 7: "Plaintiff [Ross] represented defendant throughout the Knight, et al, suit until differences arose between the parties after judgment had been entered." The majority substitutes its own findings for those of the trial court.

Consistent with the second paragraph of its memorandum opinion the trial court, in its formal conclusions of law, found that Ross is entitled to the contingent fee. It approved Ross' filing of the notice of attorney's lien, fixed the amount of the fee, and foreclosed the lien. Granted, the amount allowed was less than that which was claimed, but the question involved complex factors.

As provided in the statute, Ross filed a claim of lien under the Pierce County cause number on which a judgment was entered. Venue in the cause had by agreement been transferred to Pierce County from Klickitat County

where the real property involved in the suit was situated and where the initial action had been instituted. After the judgment was entered in Pierce County, a new cause number was obtained in Klickitat County. An abstract of the Pierce County judgment was filed under that number, as was Ross' claim of lien.

The trial court found this procedure to be proper and I agree that this procedure is allowable under RCW 60.40-.010(4). It is a lien upon the judgment, obtained for a claimant as a result of the attorney's professional services, to secure his compensation for such services in that particular case. Such a lien has the capacity to be adjudicated and ultimately enforced. *State ex rel. Angeles Brewing & Malting Co. v. Superior Court,* 89 Wash. 342, 154 P. 603 (1916).

The charging lien attaches to the fruits of the judgment when that judgment involves real property, just as it attaches to cash proceeds where there is a money judgment. I am persuaded that if the attorney whose skill and effort produces the judgment is entitled to protect his compensation through a lien on the judgment, he is entitled to have the lien attach to the fruits of the judgment.

The lien filed under RCW 60.40.010(4) attaches to the underlying real property that is the subject matter of the judgment concerned. I agree with the statement of the Supreme Court of Colorado in the early case of *Fillmore v. Wells,* 10 Colo. 228, 233, 15 P. 343 (1887):

> The attorney's lien, in so far as it relates to judgments, may be accurately defined as a right conferred by statute, or recognized by the common law, to have his compensation or costs, or both, directly secured by the fruits of the judgment. To declare him entitled to a lien upon the judgment, without permitting him, through such lien, to reach and control the subject–matter of the recovery, would be bestowing upon him the shadow, and withholding the substance. He would be no better off than are other general creditors of his client. What equitable consideration supports the conclusion that he should be secured in this way by the fruits of a money judgment,

and yet, as to the fruits of a decree or judgment relating to realty, that he should occupy the attitude of a mere general creditor? The fruits of the latter judgment are often far more valuable to his client than are the fruits of the former. Cases involving the title to or the possession of real estate present questions quite as complicated and difficult, and demand of the attorney quite as much learning and labor, as do those relating to damages for torts, or for the violation of simple contracts.

As the majority acknowledges, the Colorado Legislature approved that interpretation by enacting a law making it explicit. Evidently the Colorado Legislature did not assume, as the majority does here, that the lien right would be abused. The Legislature of Washington has recognized that an attorney is "worthy of his hire" as are others who perform services and has granted him lien rights accordingly. The court should not be niggardly in its construction of those rights.

As for the contention that the attorney violated the code of professional ethics, it was not argued before the trial court. Consequently that court did not err in failing to make findings with respect to the matter. If the defendant wishes to pursue complaints, it should be addressed to the disciplinary committee of the bar association.

I would affirm the trial court.

Reconsideration denied September 29, 1982.