[No. 9831–4–I.  Division One.  January 10, 1983.]

JUSUF SULEIMAN, *Respondent,* v. CHARLES CANTINO, ET AL, *Appellants.*

*Alexander Friedrich* and *Franklin & Watkins,* for appellants.

*A. Graham Greenlee,* for respondent.

RINGOLD, J.—Charles Cantino appeals an order distributing proceeds from the sale of certain exotic birds. The order grants priority to Cantino's judgment creditor, Jusuf Suleiman, over attorney's liens filed by Cantino's retained counsel, Franklin & Watkins (Franklin) for legal services performed in obtaining the release of the birds. The birds had been seized by the United States Fish and Wildlife Service (Service) for an alleged violation of 18 U.S.C. § 42. We affirm.

In March 1978, Suleiman and Cantino entered into a venture for the acquisition, importation, and sale of exotic Indonesian birds. Suleiman brought an action in August 1978 against Cantino, alleging that Cantino had failed to account for and pay Suleiman his share of the proceeds from the sale of the first shipment of birds. The court entered judgment in favor of Suleiman in July 1979. That judgment was affirmed by this court and is now final. *Suleiman v. Cantino*, 27 Wn. App. 1031 (1980).

During the pendency of the foregoing action, Cantino obtained a second shipment of Indonesian birds, seized by the Service and now the subject of this controversy. The Service commenced civil penalty proceedings, which were concluded on October 23, 1980, by an order directing return of the birds to Cantino upon payment of a $100 fine.

Meanwhile, in an attempt to satisfy his judgment against Cantino, Suleiman instituted proceedings supplemental to execution pursuant to RCW 6.32.010.[1] After unsuccessfully attempting to negotiate a satisfaction of the judgment, Suleiman obtained an order appointing a receiver for all Cantino's property. That order, entered May 9, 1980, provided: "The receiver shall have all the powers provided in

---

[1]RCW 6.32.010 states in pertinent part:

"At any time within ten years after entry of a judgment for the sum of twenty-five dollars or over upon application by the judgment creditor, such court or judge may, by an order, require the judgment debtor to appear at a specified time and place before the judge granting the order, or a referee appointed by him, to answer concerning the same; . . ."

RCW 7.60.040[2] and shall further be entitled and directed to sell such of the property coming under his control as is necessary to satisfy the judgment of the plaintiff herein." On November 4, 1980, Franklin filed a notice of attorney's lien claim in the cause *Suleiman v. Cantino* "upon money in the hands of adverse party." Franklin filed a second notice of attorney's lien claim in the Service proceeding on December 11, 1980.

On December 24, 1980, the trial court ruled that Suleiman's judgment had priority over both of Franklin's attorney's liens. It entered an order directing that the proceeds from the sale of the exotic birds seized by the Service be paid to Suleiman after payment of a reasonable receiver's fee. This appeal of the order followed.

## AN ATTORNEY'S LIEN UNDER RCW 60.40.010[3]

Franklin's argument with respect to the attorney's lien statute is twofold. First, he contends that an attorney may assert a lien on property to recover not only for services rendered in the particular action, but also to collect fees arising from prior services. Second, Franklin urges that neither the entry of the judgment nor the appointment of

---

[2]RCW 7.60.010:

"Receiver defined. A receiver is a person appointed by a court or judicial officer to take charge of property during the pending of a civil action or proceeding, or upon a judgment, decree or order therein, and to manage and dispose of it as the court or officer may direct."

RCW 7.60.040 provides:

"Powers of receiver. The receiver shall have power, under control of the court, to bring and defend actions, to take and keep possession of the property, to receive rents, collect debts, and generally to do such acts respecting the property, as the court may authorize."

[3]RCW 60.40.010 provides in pertinent part:

"Lien created. An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided: . . . (3) upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of the lien to that party; (4) upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered upon a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered . . ."

the receiver created a lien in favor of Suleiman, and that the property was therefore subject to a properly filed attorney's lien even in the hands of a receiver.

■ The court in *Ross v. Scannell,* 97 Wn.2d 598, 647 P.2d 1004 (1982) held that an attorney's lien, as a statutory creation, is in derogation of the common law and must be strictly construed. The court refused to extend the lien to real property. The court explained at page 604:

> This statute, in existence since 1881, provides a delineated and limited statutory attorney's lien designed to be a tool in the collection of fees. The statute in part is merely declaratory of the general or retaining lien recognized at common law. This possessory and passive lien gives an attorney the right to retain papers and documents which come into the attorney's possession during the course of his professional employment. It is a possessory and passive lien and is not enforceable by foreclosure and sale. *See Gottstein v. Harrington,* 25 Wash. 508, 65 P. 753 (1901); Stevens, *Our Inadequate Attorney's Lien Statutes—A Suggestion,* 31 Wash. L. Rev. 1 (1956).
>
> The statute, however, also goes beyond the common law in recognizing the special or charging lien. This lien is upon the judgment obtained for the client as a result of the attorney's professional services to secure his compensation. RCW 60.40.010(4). Such a lien has the capacity to be adjudicated and enforced. *See State ex rel. Angeles Brewing & Malting Co. v. Superior Court,* 89 Wash. 342, 154 P. 603 (1916); *Gottstein;* Stevens, *supra.*

■ Franklin's position is unsupported by the pertinent provisions of the attorney's lien statute. RCW 60.40.010(3) requires that the lien be filed against "money in the hands of *the adverse party* in an action or proceeding, in which the attorney was employed . . ." (Italics ours.) Though Franklin was an attorney "in an action or proceeding" in which Suleiman was "the adverse party," Suleiman obtained the judgment against Franklin's client. RCW 60.40.010(4) authorizes a lien against a "judgment to the extent of the value of any services performed by [the attorney] in the action . . ." "The action" refers back to the matter in which a "judgment" was entered for the attor-

ney's client, not a judgment against the attorney's client. Cantino did not obtain any judgment against Suleiman which could be subjected to Franklin's lien. *Scannell.* Franklin's lien is not authorized by RCW 60.40.010(3). *See Department of Labor & Indus. v. Dillon,* 28 Wn. App. 853, 859, 626 P.2d 1004 (1981). Nor is it authorized by RCW 60.40.010(4).

The short answer to Franklin's second argument is that special rights were conferred upon Suleiman by virtue of the supplemental proceedings and the court order appointing the receiver. The order created and preserved a lien in favor of Suleiman just as if the birds were in possession of the sheriff for sale under execution.

### COMMON FUND DOCTRINE

Franklin next argues that the lien should be sustained under the common fund doctrine. Washington courts initially applied this equitable doctrine only where the litigant preserved or created a specific monetary fund for the benefit of others as well as himself. *PUD 1 v. Kottsick,* 86 Wn.2d 388, 390, 545 P.2d 1 (1976). The doctrine has been broadened to include situations where the litigant confers a substantial benefit on an ascertainable class, although the attorney may not necessarily have created a specific fund. *Seattle Trust & Sav. Bank v. McCarthy,* 94 Wn.2d 605, 612–13, 617 P.2d 1023 (1980).

The common fund doctrine has no application to this situation for several reasons. The doctrine is normally restricted to cases involving a large class or group of persons with a similar claim, *Dillon,* at 858, and does not apply where the only person substantially benefited is the litigant. *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 799, 557 P.2d 342 (1976). It assumes a reasonably close similarity of interests between the litigant and the benefited class. As noted in a comprehensive article on the subject by Professor Dawson:

The common fund doctrine emerged in situations where the interests of litigants and outsiders were so closely interlocked that success in the litigation inevita-

bly brought evident and measurable gains to the outsiders.

Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds,* 87 Harv. L. Rev. 1597, 1652 (1974).

Here the primary beneficiary of Franklin's legal services was his client, Cantino. It is arguable that Suleiman indirectly benefited from Cantino's litigation with the Service in that more birds were made available for satisfaction of his judgment. It is doubtful, however, that two persons constitute a class or group as required under *Dillon.* The interests of Cantino and Suleiman were not substantially similar but rather antagonistic. As stated in 20 Am. Jur. 2d *Costs* § 86, at 72 (1965): "The rule is that there can be no allowance if the interests of the party claiming an allowance of counsel fees from a fund brought into court are antagonistic to those entitled to it, even though the services may have benefited them." *See American Ass'n of Marriage & Family Counselors Inc. v. Brown,* 593 F.2d 1365 (D.C. Cir. 1979).

Application of the common fund doctrine is inappropriate where the litigant was already directly liable to the allegedly benefited class. In the case at bench the relationship between the parties at the close of the Service proceeding was that of debtor–creditor by virtue of Suleiman's judgment against Cantino. The debt Cantino owed to Suleiman was payable without a reduction for attorney's fees incurred in the separate action. *Lindsey v. County of Los Angeles,* 109 Cal. App. 3d 933, 167 Cal. Rptr. 527 (1980). *See Dillon.*

█ Franklin's argument fails for another reason. It appears that from May 9 to October 31, 1980, Franklin performed legal services during the term of the receivership. Franklin seems to argue that as a creditor of Cantino, he made it possible for the birds to pass to the receiver for the benefit not only of Suleiman but of all creditors, and thus created a common fund. A receiver, however, may ordinarily employ counsel only by order of the court. *State ex rel. Rankin v. Farmers' State Bank,* 88 Mont. 233, 292

P. 575, 577 (1930). *See also* 2 R. Clark, *Receivers* § 642, at 1104 (1959). Franklin was not appointed to act as attorney for the receiver, who had retained his own counsel. Generally, a receiver is precluded from appointing as his counsel one who is an attorney for any of the parties to the suit. R. Clark, at 1104–05. As a mere volunteer, Franklin could not be paid out of funds coming into the receivership.

The order for distribution of proceeds entered by the trial court on December 24, 1980, is hereby affirmed.

SWANSON and CALLOW, JJ., concur.

Reconsideration denied February 3, 1983.