[No. 60712-0-I.   Division One.   June 30, 2008.]

RYAN SMITH ET AL., *Respondents*, v. MORAN, WINDES & WONG, PLLC, *Appellant*, CAIRNCROSS & HEMPELMANN, *Respondent*.

460

*Dennis M. Moran* (of *Moran, Windes & Wong, PLLC*), for appellant.

*Robert M. Sulkin, Gregory J. Hollon,* and *David R. East* (of *McNaul Ebel Nawrot & Helgren*), for respondent Cairncross & Hempelmann.

*Jordan Gross* and *Rachel L. Hong* (of *Yarmuth Wilsdon Calfo, PLLC*), for respondents Smith and Guarino.

¶1 Cox, J. — At issue are the rights of competing creditors to the settlement proceeds arising from this legal malpractice action. Ryan Smith and John Guarino are judgment creditors of Brent Nelson, the original plaintiff in this lawsuit.[1] They purchased Nelson's interest in this action at a sheriff's execution sale that they requested. The other creditor is the law firm of Moran, Windes & Wong,

---

[1] In its "Order Substituting Real Parties In Interest" dated September 5, 2006, the trial court ordered that Ryan Smith and John Guarino be substituted as plaintiffs in lieu of Brent Nelson, the original plaintiff in this action. The court

which represented Nelson in this action. Moran withdrew after Smith and Guarino intervened. Moran asserts an attorney's lien against the settlement proceeds paid by defendant Cairncross & Hempelmann to Smith and Guarino. The trial court invalidated the lien. Because the attorney's lien that Moran asserts against the settlement proceeds is valid and superior to any other liens, we reverse and remand for further proceedings.

¶2 The material facts and procedural history are not in dispute. Smith and Guarino are former executives and founders of Interactive Objects, Inc., a start-up technology company. They obtained a substantial judgment against Nelson and others arising from stock transactions that allegedly violated The Securities Act of Washington, chapter 21.20 RCW, and other law. The facts of that other lawsuit are discussed in this court's two prior opinions.[2]

¶3 Following entry of that judgment, Nelson retained Moran and commenced this legal malpractice action against Cairncross & Hempelmann. Nelson alleged that the firm's legal advice was a cause of the judgment against him in the other lawsuit. Nelson and Moran entered into a written contingent fee agreement. Among other things, the agreement provided for "a first position lien on a) the claims any [sic] b) and all proceeds of this [malpractice] lawsuit."[3]

¶4 Based on the judgment in the other lawsuit, Smith and Guarino obtained a writ of execution directed to the sheriff, who then levied against Nelson's interest in this action. Thereafter, the sheriff conducted a sheriff's sale of that interest on August 7, 2006. Smith and Guarino bid $25,000 of their judgment against Nelson and were the successful purchasers of Nelson's interest in this malpractice action at the sheriff's sale.

---

further ordered that "the caption will state that John Guarino and Ryan Smith are the plaintiffs and Brent Nelson's name will be removed." Clerk's Papers at 237.

[2] *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 86 P.3d 1175 (2004); *Guarino v. Interactive Objects, Inc.*, noted at 137 Wn. App. 1029, 2007 Wash. App. LEXIS 383, 2007 WL 664878.

[3] Clerk's Papers at 1520.

¶5 Thereafter, they moved to be substituted as plaintiffs for Nelson as the real parties in interest in this malpractice action. The court granted the motion and directed that the names of Smith and Guarino be added and Nelson's name be removed from the caption.[4]

¶6 Moran later withdrew as counsel. Smith and Guarino obtained new counsel, Yarmuth Wilsdon Calfo, PLLC, to represent them in this action.

¶7 In August 2007, Cairncross & Hempelmann negotiated a settlement of all claims in this case with Smith and Guarino. Moran asserted a claim of lien against the settlement proceeds. In response, Smith and Guarino moved to invalidate the lien. The trial court granted that motion.

¶8 Moran appeals.

## LIEN FOR ATTORNEY FEES

¶9 Moran argues that the trial court erred in invalidating the attorney's lien that it asserts against the settlement proceeds. We agree.

### Statutory Interpretation

¶10 Our fundamental objective in reading a statute is to ascertain and carry out the legislature's intent.[5] If a statute's meaning is plain on its face, then we must give effect to that plain meaning.[6] Under the plain meaning rule, such meaning is derived from all that the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question.[7]

¶11 If, however, a statute is ambiguous, the reviewing court may look to outside sources such as legislative

---

[4] Clerk's Papers at 237.

[5] *King County v. Seawest Inv. Assocs., LLC*, 141 Wn. App. 304, 309, 170 P.3d 53 (2007).

[6] *Id.*

[7] *Id.*

history to determine legislative intent.[8] A statute is ambiguous if it is subject to more than one reasonable interpretation.[9] In interpreting a statute, a court should not adopt an interpretation that renders any portion meaningless.[10] Strained meanings and absurd results should be avoided.[11] The meaning of a statute is a question of law that we review de novo.[12]

## Creation of Lien

■ ¶12 The 2004 amendments to RCW 60.40.010, the attorney's lien statute, provide in relevant part as follows:

(1) An attorney has a lien for his or her compensation, whether specially agreed upon or implied, as hereinafter provided:

. . . .

(d) *Upon an action*, including one pursued by arbitration or mediation, *and its proceeds after the commencement thereof* to the extent of the value of any services performed by the attorney in the action, or if the services were rendered under a special agreement, for the sum due under such agreement; . . .

. . . .

(2) Attorneys have the same right and power over actions to enforce their liens under subsection (1)(d) of this section and over judgments to enforce their liens under subsection (1)(e) of this section as their clients have for the amount due thereon to them.

(3) The lien created by subsection (1)(d) of this section upon an action and proceeds and the lien created by subsection (1)(e) of this section upon a judgment for money is superior to all other liens.

(4) The lien created by subsection (1)(d) of this section is not affected by settlement between the parties to the action until the lien of the attorney for fees based thereon is satisfied in full.

---

[8] *Cannon v. Dep't of Licensing*, 147 Wn.2d 41, 56-57, 50 P.3d 627 (2002).

[9] *Id.* at 56.

[10] *Seawest*, 141 Wn. App. at 309.

[11] *Id.*

[12] *Id.*

(5) *For the purposes of this section, "proceeds" means any monetary sum received in the action.* Once proceeds come into the possession of a client, such as through payment by an opposing party or another person or by distribution from the attorney's trust account or registry of the court, the term "proceeds" is limited to identifiable cash proceeds determined in accordance with RCW 62A.9A-315(b)(2). The attorney's lien continues in such identifiable cash proceeds, subject to the rights of a secured party under RCW 62A.9A-327 or a transferee under RCW 62A.9A-332.

(6) Child support liens are exempt from this section.[13]

The legislature also stated its purpose for the 2004 amendments:

*The purpose of this act is to end double taxation of attorneys' fees obtained through judgments and settlements, whether paid by the client from the recovery or by the defendant pursuant to a statute or a contract.* Through this legislation, *Washington law clearly recognizes that attorneys have a property interest in their clients' cases* so that the attorney's fee portion of an award or settlement may be taxed only once and against the attorney who actually receives the fee. *This statute should be liberally construed to effectuate its purpose.* This act is curative and remedial, and intended to ensure that Washington residents do not incur double taxation on attorneys' fees received in litiga-

---

[13] (Emphasis added.) Former RCW 60.40.010 (1881) stated as follows:

An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided: (1) Upon the papers of his client, which have come into his possession in the course of his professional employment; (2) upon money in his hands belonging to his client; (3) upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of the lien to that party; (4) upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

Thus, the 2004 amendments designated the introductory paragraph of the former statute as subsection (1) of the amended statute and redesignated former item numbers (1) through (3) as new subsections (1)(a) through (1)(c). Subsection (1)(d) is new. Former item number (4) is new subsection (1)(e). Subsections (2) through (6) are new.

tion and owed to their attorneys. Thus, except for RCW 60.40.010(4), the statute is intended to apply retroactively.[14]

¶13 Here, Moran appears to argue that the written contingent fee agreement that Nelson executed in connection with this malpractice case is a source of the attorney's lien the law firm asserts.[15] Moran further argues that Smith and Guarino, the successors to Nelson's interest in this malpractice action, "have a contractual lien obligation in addition to the statutory one."[16]

¶14 We need not address either whether Moran has a contractual lien or whether Smith and Guarino have any obligation under such a lien. The plain words of subsection (1)(d) of the statute state that an attorney's lien for compensation, whether express or implied, arises by operation of law "[*u*]*pon an action . . . and its proceeds* after the *commencement*" of the action.[17] Subsection (5) states, "For the purposes of this section, '*proceeds*' means any monetary sum received in the action."[18]

¶15 An action is "commenced" upon service of the summons and complaint or by filing a complaint.[19]

¶16 Applying the plain words of the statute to the undisputed facts of this case, we conclude that an attorney's lien for compensation in favor of Moran arose by operation of law upon this malpractice action and its proceeds. The lien arose when this action was commenced in March 2006. The lien attached to this action and any proceeds of the action, specifically settlement funds.

---

[14] LAWS OF 2004, ch.73, § 1 (emphasis added); *see also* S.B. REP. on S.B. 6270, 58th Leg., Reg. Sess. (Wash. 2004); FINAL B. REP. on Engrossed Substitute S.B. 6270, 58th Leg., Reg. Sess. (Wash. 2004) (discussing these policies).

[15] Br. of Appellant at 9-10.

[16] *Id.* at 20.

[17] RCW 60.40.010(1)(d) (emphasis added).

[18] RCW 60.40.010(5) (emphasis added).

[19] CR 3(a); *Banzeruk v. Estate of Howitz*, 132 Wn. App. 942, 945, 135 P.3d 512 (2006), *review denied*, 159 Wn.2d 1016 (2007).

¶17 That lien is superior to all other liens.[20] It is not affected by settlement of the parties until the lien is satisfied in full.[21]

¶18 Smith and Guarino do not argue that their interest in this malpractice action is superior in priority to that of Moran. Indeed, priority of competing lien claims is not at issue here. Rather, the question is whether Nelson's interest in this action and its settlement proceeds, which Smith and Guarino purchased at their execution sale, is subject to Moran's lien for attorney's fees.

¶19 Accordingly, we conclude that this action and its settlement proceeds became subject to an attorney's lien in favor of Moran in March 2006, at the commencement of this malpractice action.

### Discharge of Lien

¶20 Smith and Guarino challenge the validity of Moran's lien on several bases. We consider and reject all of them.

¶21 They first argue that the attorney's lien statute does not authorize a lien against settlement proceeds in excess of amounts due a client. Specifically, they argue that since Nelson no longer has a right to recover settlement proceeds, Moran no longer has a lien for fees. For support, they rely on RCW 60.40.010(2) and several cases that were decided before the 2004 amendments to the attorney's lien statute. Their reliance is misplaced.

¶22 Smith and Guarino assert that RCW 60.40.010(2) grants attorneys a lien "that is limited by the right of the client itself to recover."[22] We do not agree. RCW 60.40.010(2) states:

Attorneys have the same right and power over actions to enforce their liens under subsection (1)(d) of this section and

---

[20] RCW 60.40.010(3).

[21] RCW 60.40.010(4).

[22] Br. of Resp'ts at 9.

over judgments to enforce their liens under subsection (1)(e) of this section as their clients have for the amount due thereon to them.

The meaning of this subsection is not entirely clear from the text. But the legislative intent is made clear by a reading of the legislature's stated purpose for the 2004 amendments to the attorney's lien statute:

> *The purpose of this act is to end double taxation of attorneys' fees obtained through judgments and settlements, whether paid by the client from the recovery or by the defendant pursuant to a statute or a contract.* Through this legislation, *Washington law clearly recognizes that attorneys have a property interest in their clients' cases* so that the attorney's fee portion of an award or settlement may be taxed only once and against the attorney who actually receives the fee. *This statute should be liberally construed to effectuate its purpose.*[23]

¶23 It is clear from the above legislative history that the purpose of RCW 60.40.010(2) is to recognize an attorney's property interest in his or her client's case in order to avoid double federal income taxation. In short, counsel's property interest by way of the lien, not the client's interest, is to be taxed. Nowhere in this statement of legislative intent is there any suggestion that the purpose of the subsection is to discharge or otherwise affect the property interest of a law firm in its client's case where the client is displaced by others during the case.

¶24 To read the subsection in the manner Smith and Guarino argue sharply conflicts with the other 2004 amendments. For example, the amendments grant the attorney's lien a super priority.[24] They also protect the lien despite

---

[23] LAWS OF 2004, ch. 73, § 1 (emphasis added); *see also* S.B. REP. on S.B. 6270, 58th Leg., Reg. Sess. (Wash. 2004) (The purpose of the amendments is to recognize an attorney's property interest in an action in order to avoid double taxation. (citing *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers*, 114 Wn. App. 80, 55 P.3d 1208 (2002); *Banaitis v. Comm'r*, 340 F.3d 1074 (9th Cir. 2003))).

[24] RCW 60.40.010(3).

settlement between the parties.[25] And the lien against settlement proceeds follows possession of the proceeds by the attorney's client, subject to the provisions of the Uniform Commercial Code (UCC).[26] These provisions reinforce rather than diminish the nature and importance of the property interest of the attorney's lien in the action and its proceeds. Accordingly, we see no reason to conclude that the lien is discharged when the original client leaves the case.

¶25 We conclude that RCW 60.40.010(2) does not support invalidating the attorney's lien in favor of Moran.

¶26 Smith and Guarino next contend, "Washington courts have consistently interpreted RCW 60.40.010 to require recovery by a client to enforce a lien for fees under the statute."[27] But the cases they cite do not support their argument that a lien cannot be enforced against a plaintiff who purchases a cause of action at an execution sale. Moreover, the cases they cite interpret the pre-2004 version of the statute. But the 2004 amendments significantly changed the statute, as we have already explained.

¶27 For example, both *Wilson v. Henkle*[28] and *Suleiman v. Cantino*[29] involved a judgment *against* the client, rather than a judgment in the client's favor. This court held in both cases that the preamendment attorney lien statute authorized a lien against a judgment in the client's favor, not a judgment against the client in favor of the adverse party.[30] The cases do not address the situation in this case, in which there is a settlement in favor of the current plaintiffs after

---

[25] RCW 60.40.010(4).

[26] RCW 60.40.010(5).

[27] Br. of Resp'ts at 10.

[28] 45 Wn. App. 162, 164, 724 P.2d 1069 (1986).

[29] 33 Wn. App. 602, 604, 656 P.2d 1122 (1983).

[30] *Wilson*, 45 Wn. App. at 170; *Suleiman*, 33 Wn. App. at 606-07.

the original client was no longer the real party in interest. The other cases they cite are similarly inapposite.[31]

¶28 Smith and Guarino also argue that an attorney's lien is not enforceable against a nonclient. While this is true, it is irrelevant to the issue we decide: whether settlement proceeds of this malpractice action are subject to Moran's lien for attorney's fees.

¶29 Smith and Guarino appear to argue that the Moran attorney's lien was somehow discharged by virtue of their purchase of Nelson's interest in this malpractice action at the sheriff's sale they requested.[32] We disagree.

¶30 It is well established that an execution creditor who directs a sheriff to levy upon and sell property of the judgment debtor is not a bona fide purchaser for value, taking only such interest as the judgment debtor has.[33] Here, Smith and Guarino caused the sheriff to levy upon and sell Nelson's interest in this malpractice action. They are not bona fide purchasers for value and took that interest subject to Moran's lien for attorney fees.

¶31 We note further that the lien that Moran claims does not require any affirmative acts other than commencing the lawsuit. Unlike subsection (1)(e), which requires filing of a notice with the clerk of the court where a lien against a judgment is sought, no such notice is required by subsection (1)(d), establishing a lien against an action and its proceeds.

¶32 Smith and Guarino argue that we should not apply the well-established principle that the creditor pur-

---

[31] *See In re Tr.'s Sale of Real Prop. of Whitmire*, 134 Wn. App. 440, 447, 140 P.3d 618 (2006) (holding that the attorney lien statute did not entitle the attorney to funds derived from a *different* cause of action than the one in which the attorney represented the client); *Ross v. Scannell*, 97 Wn.2d 598, 606, 647 P.2d 1004 (1982) (concluding that the attorney lien statute does not apply to real property).

[32] Br. of Resp'ts at 11-12 ("On the contrary, the plain language of RCW 60.40.010 confirms that attorney's fees liens on an action and its proceeds do not follow that action in the event of a transfer, as other kinds of liens may do under other statutes.").

[33] *Anderson Buick Co. v. Cook*, 7 Wn.2d 632, 638, 110 P.2d 857 (1941).

chasing at an execution sale takes only the debtor's interest. They claim that we should not apply this principle because we strictly construe the attorney's lien statute and do not apply cases involving other law. This argument is unconvincing.

¶33 We note that subsection (5) of the lien statute expressly refers to the UCC. Thus, reference to other statutes for purposes of determining competing rights of creditors is not barred.

¶34 More importantly, reference to the law of execution sales is not barred where the attorney's lien statute is silent on the point. In short, there is no violation of the strict construction rule, to the extent that it is even applicable to the 2004 amendments that are at issue here, by reference to other law.

¶35 We conclude that the interest in settlement proceeds that Smith and Guarino acquired at the sheriff's sale they requested remained subject to Moran's preexisting lien for attorney's fees.

¶36 Finally, Smith and Guarino argue that Moran's claim for fees is against Nelson, not them. That is true but irrelevant.

¶37 The purpose of a lien is to secure payment for amounts owed.[34] The question here is whether Moran has a valid lien for attorney's fees against the settlement proceeds, not whether the law firm has a right of action against Nelson for unpaid fees.

¶38 We note that Smith and Guarino, as judgment creditors of Nelson, also have a right against other property that Nelson owns. But that does not diminish their right to claim ownership of Nelson's rights in this malpractice action. We see no reason to accept their argument that a right to recover elsewhere affects the right to the action and its proceeds in this case.

---

[34] *Ross*, 97 Wn.2d at 604 (the attorney's lien statute is a tool to secure compensation).

¶39 We conclude that Moran's right to sue Nelson for unpaid fees has no effect on the validity of its lien for attorney's fees against this action and its settlement proceeds.

### Amount of Lien

¶40 The trial court did not have occasion to rule on arguments about the amount of the attorney's fee lien in light of its decision to invalidate the lien. Moreover, neither party in this appeal has satisfactorily addressed the amount of the Moran lien. We note that at oral argument counsel for Smith and Guarino represented to this court that settlement proceeds have been paid to their clients.

¶41 Because the question of the amount of the attorney's lien is not presently before us, we direct the trial court to consider and resolve it on remand.

## CONFIDENTIALITY AGREEMENT

¶42 Respondent Cairncross & Hempelmann takes no position on the issues that are properly before us. However, the firm asks us to rule on matters pertaining to the confidentiality of its settlement agreement.

¶43 We decline to do so. Those matters are not presently before us and we do not address them.

¶44 To summarize, Moran has a lien for attorney's fees that arose by operation of law under RCW 60.40.010(1)(d) in March 2006. That lien was not discharged either by the subsequent sheriff's sale or the substitution of Smith and Guarino as the real parties in interest in this malpractice action. The amount of the lien is to be decided by the trial court on remand.

¶45 We reverse and remand for further proceedings.

GROSSE and BECKER, JJ., concur.

Review denied at 165 Wn.2d 1032 (2009).